FILE DATE
STAMP
OCTOBER 5, 2020
CLERK'S OFFICE
Received by the Pro Se Office
10/5/2020-KC

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| Jonathan Reich | : | DOCKET NO. 19-CV-06491 |
| Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| CITY OF NEW YORK, and | : | **COMPLAINT &** |
| DETECTIVE John Fogelman | : | **JURY DEMAND** |
| in his individual and official capacity as a | : | |
| Police Officer employed by the | : | |
| City of New York, John Does #1 – 8, | : | |
| GEORGE DELUCA-FARRUGIA in his individual | : | |
| and official capacity as an Assistant District | : | |
| Attorney employed by the City of New York, and | : | |
| ANDREW M. CUOMO, in his individual | : | |
| and official capacity as Governor of the State | : | |
| of New York | : | |
| | : | |
| Defendants | : | |
| | : | |

Plaintiff, Jonathan Reich, as and for his Complaint, hereby alleges the following, upon

information and belief:

**PRELIMINARY STATEMENT**

1.  This is a civil rights action in which Plaintiff seeks relief for the violation of his rights

    secured by 42 U.S.C. § 1983, 1988, the Fourth, Fifth, Sixth, Eight and Fourteenth

    Amendment to the United States Constitution.

2.  This claim arises from an arrest on November 21st, 2016, in which Officers of the New

    York City Police Department ("NYPD"), acting under the color of state law, intentionally

    and willfully subjected plaintiff to, inter alia, false arrest and false imprisonment.

3. Plaintiff was falsely accused of being a fugitive and was a victim of prosecutorial misconduct, malicious prosecution, unequal treatment, and clear violations of the letter of law by the Queens County District Attorney's Office. Plaintiff was unjustifiably incarcerated and illegally held with no bail, with no legal basis, and in direct violation of New York Criminal Procedure Law (CPL) § 570.02 - § 570.66, for over 90 days with no bail, no New York charges, and no evidence. Plaintiff was falsely accused of being a fugitive and maliciously targeted by individuals at the Queens County District Attorney's Office.

4. Plaintiff seeks money damages (special, compensatory, and punitive) against the defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURSDICTION

5. This action is brought pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 1983, and the Fourth and Fourteenth Amendments to the United States Constitution.

6. The amount in controversy exceeds $75,000.00 excluding interest and costs.

## VENUE

7. Venue is laid within the United States District Court for the Eastern District of New York in that the Defendant City of New York is located within, and a substantial part of the event giving rise to the claim occurred within the boundaries of the Eastern District of New York.

## PARTIES

8. Plaintiff, Jonathan Reich, is a United States citizen and at all times herein relevant resides in Queens County, City and State of New York.

9. The City of New York ("the City") is a municipality corporation organized under the laws

of the State of New York. At all times relevant hereto, Defendant City, acting through the New York City Police Department (NYPD), was responsible for the appointment, training, supervision, implementation, and conduct of all NYPD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

10. Officer, John Fogelman, at all times here relevant, is a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Officer, John Fogelman, was Plaintiff's "arresting officer" and was under the command of the 107th precinct of the NYPD. Defendant, John Fogelman, is sued in his individual capacity.

11. Defendant George DeLuca-Farrugia, is an Assistant District Attorney at the Queens District Attorney's Office, located at 80-02 Kew Gardens Road, Kew Gardens, NY 11415.

12. Defendant Andrew M. Cuomo is the Governor of the State of New York. Defendant Cuomo has an office located at State Capitol Building Albany, NY 12224.

13. All other individual Defendants ("the officers"), including John Does #1-8, individuals whose names are currently unknown to plaintiff, are employees of the NYPD, and are sued in their individual capacities.

14. At all times here mentioned defendants were acting under the color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

15. At all times hereinafter mentioned, the Plaintiff Jonathan Reich is an individual and resides

in Flushing, NY.

16. Upon information and belief, and at all times hereinafter mentioned, defendant City of New York, was and now is, a municipal corporation, existing under and incorporated under the laws of the State of New York, with its principal place of business located at the Municipal Building, One Centre Street, New York, NY 10007.

17. That upon information and belief, the City of New York owned, operated, controlled and maintained the New York City Police Department by charter, or by law, under the provisions of the State and/or City of New York.

18. Upon information and belief, and at all times hereinafter mentioned, defendant Police Officer John Fogelman was and now is a New York City Police Officer, who was employed with the New York City Police Department on the date of this incident.

19. At the time of the alleged incident and at all times pertinent hereto, the defendant Police Officer John Fogelman acted under color of State Law or a statute, ordinance, regulation or custom.

20. The District Attorney's Office ["D.A."] and Assistant District Attorneys of the Queens County ["ADAs"] are agents and employees of the City of New York with offices at 80-02 Kew Gardens Road, Kew Gardens, NY 11415.

21. Upon information and belief, the Queens District Attorney is responsible under State law for making policy in the County of Queens for the City of New York and is a policymaker for the City of New York by virtue of its conduct.

## NOTICE OF CLAIM

22. Within 90 days of the incident, Plaintiff filed written Notice of Claim with the New York City Office of the Comptroller. Over 30 days have elapsed since the filing of the notice,

and this matter has not been settled or otherwise disposed of.

## STATEMENT OF FACTS

23. Defendants assisted in the framing of Plaintiff for a misdemeanor level allegation in Connecticut, of harassment, a municipal violation on the same level as littering. Defendants violated multiple civil rights of Plaintiff and organized an illegal extradition based on false documents and false sworn statements and certifications made by Connecticut officials that amount to perjury. Defendants used and abused the legal system and their taxpayer funded positions to threaten and jail an innocent person, with no bail and no evidence.

24. Defendants successfully framed Plaintiff as being a dangerous fugitive, when in reality, Plaintiff is a law-abiding citizen and journalist.

25. Around February 2013, Plaintiff and Plaintiff's family members begin to receive threatening and repetitive phone calls from unknown parties and individuals at the Avon Connecticut Police Department.

26. On or about March 10, 2013, TFC Michael Downes of the Connecticut State Police filed in his report that they had investigated the elements of this case and found that "no violation occurred." This report was purposely concealed from Plaintiff during and after his arrest.

27. Hazardous materials were also mailed to Plaintiff's family members, and individuals have been impersonating Plaintiff, stolen Plaintiff's identity, and misused it since as early as 2013.

28. Plaintiff had not been in Connecticut and was not harassing anyone. As early as May 21, 2013, Plaintiff begins to receive threatening communications, that are reported to the New York City Police Department and the Avon Police Department, but negligently not investigated.

29. For over five (5) years, Plaintiff was victimized by the conduct and actions of several responsible parties, including individuals from the following public offices: New York City Police, Avon Connecticut Police, Hartford State's Attorney, and Queens County District Attorney's Office. Plaintiff is a victim of police misconduct, public corruption, and prosecutorial misconduct.

30. Plaintiff was improperly restricted from viewing any documents or evidence in the case or operating a legal defense fund by his own attorneys and the Hartford State's Attorney's office. Plaintiff's defense counsel was actively deceiving Plaintiff, and purposely acted against Plaintiff's best interests. Defense counsel had a prior conflict of interest, that led to them defrauding Plaintiff while also representing the complainants in the case and operating fundraisers for them. Defense counsel actively raised funds for those responsible for framing Plaintiff, the funds raised by defense counsel amounted to over $20,000,000.00.

31. Clearly, this conduct and $40,000.00 bill for legal services, to defend against a misdemeanor allegation with a maximum $250 fine, is unusual, unethical, and outrageous. With an obvious conflict of interest, Defense counsel defrauded Plaintiff for about $40,000.00 in unjust legal fees and purposely concealed any supposed evidence, important documents, reports, and case materials from Plaintiff. Furthermore, Defense counsel has a history of defrauding clients.

32. Over fifteen (15) postponements were unjustly made against the Plaintiff's best interests. Plaintiff witnessed procedures on about twenty (20) occasions at the Hartford Community Court where about over fifty (50) individuals daily would be given a few hours of community service and be on their way. The Hartford Community Court was designed to

assist the community by coordinating community service tasks for very low-level allegations like littering. That was not happening to Plaintiff, and different excuses and postponements were made by Defense counsel and the Assistant State's Attorney Thomas O'Brien. Plaintiff performed community service voluntary and on his own accord, which was submitted to the Hartford Community Court, however they continued to unjustly keep the case active and refused to provide Plaintiff with reports or evidence of what the accusations were. There were never any accusers present for the entirety of this case.

33. Defendants and their associates in Connecticut, utilized the extradition process to cause cruel and unusual punishment to Plaintiff, outside the confines of normal procedure, passing the line into criminal conduct.

34. On or about June 27, 2014, Prosecutors in Connecticut falsely issue a bail commissioner's letter and falsely accuse Plaintiff of not appearing at a court date when they purposely postponed the court date, knowing this could potentially be used against Plaintiff in the future.

35. On or about August 24, 2015, Plaintiff files an official complaint addressed to Gail P. Hardy, Hartford State's Attorney. To date, this complaint has never been responded to. Whenever Gail P. Hardy's office was reached about this issue, the phone calls would be disconnected. The same unusual behavior happened at the Hartford Community Court where whenever the Plaintiff's name would be mentioned, court staff would disconnect phone calls and refuse to cooperate with Plaintiff's second and third defense counsels.

36. Plaintiff was denied due process and even basic police reports such as the Arrest Warrant Affidavit. Even though the reports were not provided or accessible to Plaintiff, they were illegally disseminated to parties including a journalist for Patch Media Corporation. The

journalist, Jessica L. Sawyer, published multiple articles prior to Plaintiff's arraignment.

37. On August 13, 2016, Plaintiff filed a complaint (Reich v. Patch Media, New York County Supreme Court Index No. 156787-2016) against Patch Media Corporation, Charles C. Hale, Warren St. John, and Jessica L. Sawyer.[1] Excerpts include: "Plaintiff is an honest and law-abiding young man who had a promising future and was a college student with no criminal record. Plaintiff was accused of making threatening phone calls to individuals in the state of Connecticut. Plaintiff has never been convicted for making any type of phone calls. No evidence has ever been brought forth to the accused, his counsel, or to a court of law. Unfortunately showing great irresponsibility, Defendants made false and defamatory statements about Plaintiff." "As hoped by Defendants, these sensational claims reported in their publication, resulted in widespread dissemination internationally, through news media outlets, social media platforms and organizations. Since publication, online and in-person entities have stalked and harassed the Plaintiff and Plaintiff's family." "As a result Plaintiff has suffered terrible harm to his reputation, economic prospects, damage to his career prospects, social stigmatization and ridicule, and painful emotional and physical distress and suffering."  "Defendants publication of false claims that Plaintiff was "harassing" and "threatening" all kinds of people were done with malicious intent, or at a minimum reckless negligence." "Defendants proximately caused damage to Plaintiff through its publication of false claims that Plaintiff was "harassing" and "threatening" all kinds of people." "Anybody who ever Googles or inputs Plaintiff's name into any Internet search engine will be met with these irresponsible stories. These are inherently damaging statements, and have caused Plaintiff to suffer loss of economic opportunities, scorn,

---

[1] Exhibit 1 – Reich v. Patch Media, New York County Supreme Court Index No. 156787-2016

derision, hatred, harassment, difficulty finding employment, deep emotional pain, and even resulted in physical harm. They have interfered with this young man's education and career prospects and his entire life." "As a result Plaintiff and his family members have been targeted at the home address published by the Defendants and on online websites and social media platforms, with the intent to intimidate, threaten, trespass on private property, and express anti-Semitism." "The statements contained within the news articles have subjected Plaintiff to "trial-by-media" and exposed Plaintiff to civil rights violations and discriminatory treatment within the Hartford Judicial System by State Employees, targeting Plaintiff for over three (3) years. Defendants impeded Plaintiff's right to a fair jury trial by swaying the public's opinion of Plaintiff before arraignment, revealing alleged witness names, and carelessly endangering and revealing alleged witnesses."

38. While basic reports and other Brady Material[2] were withheld from Plaintiff, internal police documents that were falsified, including an Arrest Warrant Affidavit were provided to the Patch media outlet, who began to publish defamatory information about Plaintiff, in May 2013, before Plaintiff's arraignment.

39. On or about June 15, 2014, Plaintiff established a legal defense fund, JRDEFENSEFUND.COM, which clearly is within Plaintiff's civil rights. Many high-profile individuals routinely raise legal funds and the funds are often set up by counsel. After about $40,000.00 was needlessly paid to attorneys, who were purposely working against their client, those very same attorneys instructed Plaintiff to remove his legal defense fund or face additional charges in Connecticut.

---

[2] The government's withholding of evidence that is material to the determination of either guilt or punishment of a criminal defendant violates the defendant's constitutional right to due process. Brady v. Maryland, 373 U.S. 83 (1963)

40. Starting in 2015, Plaintiff experienced aggravated harassment, stalking, and trespassing on Plaintiff's property. This included vehicles and individuals stalking and dropping off hazardous materials on the property. No assistance was offered after multiple reports were made to the New York City Police Department.

41. On or about August 24, 2015, Plaintiff files a complaint sent to Hartford State's Attorney, Gail P. Hardy.[3]

### ATTORNEY CHRISTOPHER GROTZ IS HIRED

42. On or about September 1, 2015, Plaintiff hired new defense counsel in Connecticut. Plaintiff's attorney, Christopher Grotz (deceased at age 64, May 11, 2017 in Connecticut), contacted the New York City Police Department multiple times about this matter.  Plaintiff actively worked with the New York City Police Department on this matter, and it was thoroughly investigated throughout the years of 2015 and 2016.

43. Attorney Grotz was unable to obtain any police reports or materials from the New York City Police Department and the general response was that the 107th Precinct did not participate in any investigations of Plaintiff, a conclusion was reached by Attorney Grotz that the Connecticut arrest warrant was falsified.[4]

### ATTORNEY CHRISTOPHER GROTZ ATTEMPTS TO OBTAIN POLICE REPORTS AND BASIC INFORMATION

44. Attorney Grotz also concluded that the Docket Information Page was tampered with and not a true and accurate legal document.[5]  Attorney Grotz's communications and filed motions to the case in Connecticut were routinely ignored, with no explanation. This was

---

[3] Exhibit 7 – Complaint to Gail P Hardy, Hartford State's Attorney [August 24, 2015]
[4] Exhibits 3 & 4 – Letter of Attorney Christopher Grotz + Certified Mail Receipt [October 26, 2015]
[5] Exhibits 8 & 9 – Docket Information Page Before Tampering + Docket Information Page After Tampering

highly unusual, and Attorney Grotz had not encountered these types of blatant violations of protocol and procedures before, on any cases he handled. The Hartford State's Attorney's office refused to provide Attorney Grotz with any evidence or information about the case. All motions and several documents filed by Attorney Grotz were ignored continuously.

45. On or about October 7, 2015, Attorney Grotz files a 'Request for Discovery' that was received and ignored. Attorney Grotz waited and waited for this basic information, however the Defendants were unable to provide him with even basic evidentiary items or police reports they had already provided to the press several years prior. Attorney Grotz had never encountered this blatant malicious behavior by taxpayer funded workers before and he had practiced law in many courts in the state of Connecticut.[6]

46. On or about November 10, 2015, Attorney Grotz contacted the Hartford Superior Court by phone several times, regarding security and safety concerns for his client, as well as to obtain evidence of the suspect or suspects who were captured on security cameras at the courthouse. Officials at the courthouse directed Attorney Grotz to submit a request in writing to Mr. O'Donovan Murphy, the Director of Judicial Marshal Services, located at 61 Woodland Street, Hartford, CT 06105. Ultimately, the attorney's concerns were ignored by the Judicial Marshal Services and courthouse staff.[7]

47. The overwhelming evidence purports to suggest that the Defendants and their partners in Connecticut are associated with the targeting of Plaintiff with threats and harassment, as those entities, unusually made every effort to ensure that the individuals stalking and threatening people on court property and at a local residence, could continue to threaten

---

[6] Exhibit 16
[7] Exhibit 5 – Letter of Attorney Christopher Grotz to Judicial Marshal Services [November 10, 2015]

Plaintiff and Plaintiff's family.

## CONNECTICUT STATE POLICE
## CONFIRMS PLAINTIFF IS NOT A FUGITIVE

48. On or about January 3, 2016, Plaintiff contacted the Connecticut State Police via phone and filed an official written complaint about this identical matter to report the "felony tampering of official court documents" and that "There have been no court date notifications sent by the court via mail to my residence in compliance with the enforcement of the FTA charge that stands current with an excessive bail of $100,000 for a Class C misdemeanor." Connecticut State Police representatives inform Plaintiff that he is not wanted for any reason and that there are no open warrants against him in any state.[8]

## NEW YORK CITY POLICE DEPARTMENT (NYPD)
## CONFIRMS PLAINTIFF IS NOT A FUGITIVE AND REFERS
## TO PLAINTIFF AS A "FREE MAN"

49. On April 20, 2016, at around 12:43 PM, Plaintiff contacts the New York City Police Department at the 107th Precinct regarding this matter. Plaintiff explains the matter in detail, a Police representative investigates the matter and searches for open warrants or investigations of Plaintiff, to determine if Plaintiff is wanted by any police agency nationally. The representative obtains all relevant personal details from Plaintiff. The representative researches the matter and determines Plaintiff is a "free man." The transcript has been redacted for personal information.[9]

Transcript Excerpts:

"Searching… I don't see anything in here with your name, date of birth. I mean, absolutely nothing… Alright, so I have, I just looked you up here. You used to live in _____… Yeah, there's nothing here for you. Nobody has an investigation against you. Nobody's looking for you. You are not a victim of anything. You are, unfortunately, hate to say it, not on our

---

[8] Exhibit 6 – Complaint to Connecticut State Police [January 3, 2016]
[9] Exhibit 12 – Transcript of Telephone Call to New York City Police Department [April 20, 2016]

list for anything… Alright? Isn't that a good thing? It's an excellent thing… Unfortunately, I cannot give you that in writing… You're, I got news for you… You're a free man. Ah. you know, that's a great thing, isn't it? There's no but, there's no but to that..."

50. On or about May 13, 2016, Plaintiff experiences repeated instances stalking, threatening, and trespassing on Plaintiff's property. This coincided with online harassment of Plaintiff. New York City Police officers respond to the Plaintiff's property and claim them will file a report and open an investigation into the harassment. Officers spend about thirty (30) minutes with Plaintiff and request his Driver's License which they run a check on and determine he is not a fugitive and is not wanted for anything by any agency nationally. A screenshot from a recorded video interaction with the New York City Police representatives shows a Complaint Report filled out on behalf of Plaintiff.  Showing reckless disregard and negligence for their duties, on the very next day, Defendants suddenly refused to investigate the matter and later claimed that the New York City Police Department does not investigate harassment.[10]

## AVON POLICE DEPARTMENT
## CONFIRMS PLAINTIFF IS NOT A FUGITIVE

51. On June 21, 2016, at around 2:00 PM, Plaintiff contacts the Avon Connecticut Police Department about the matter. Plaintiff requests an investigation into individuals abusing their positions to target Plaintiff. Plaintiff requests notification of any open cases against Plaintiff as this was the originating agency for this matter. Dispatcher 1738 confirms "there are no open cases, with the Avon police in regards to your name."[11]

## NEW YORK CITY POLICE DEPARTMENT (NYPD) INTERNAL AFFAIRS
## BUREAU (IAB) CONFIRMS PLAINTIFF IS NOT A FUGITIVE

---

[10] Exhibits 13 & 14 – Interaction with NYPD [May 13, 2016]
[11] Exhibit 11 – Transcript of Telephone Call to Avon Police [June 21, 2016]

52. On or about July 25, 2016, Sergeant Paul Muggeo of the New York City Police Department's 107th Precinct Detective Squad states in a letter to Plaintiff: "The New York City Police Department is conducting an official investigation in regards to your complaint stemming from 3/01/2013."[12]

53. The New York City Police Department actively investigated the situation and acted cordially while working directly with Plaintiff on the official investigation. Muggeo is a high-ranking sergeant at the 107th Precinct Detective Squad and is clearly qualified and capable of conducting an investigation properly. Furthermore, Muggeo was clearly able to determine the person he was communicating with was not a fugitive.

54. On or about September 17, 2016, unidentified associates of the Defendants contacted Plaintiff's family members for the purposes of threatening, harassment, extortion, and stalking. Defendants created several email accounts to conceal their threatening, stalking, harassment, and other illegal activities. Defendants utilize a false identity and pseudonym, 'Vlad Impaler', a reference to 'Vlad the Impaler,' and utilize a Google 'Gmail' Email account, vladsandyhooker@gmail.com. Vlad was well known for employing extremely cruel measures and torture to inspire fear in those who opposed him. He earned his nickname by impaling his enemies on stakes in the ground and leaving them to die.[13] Defendants created email accounts and other online accounts to impersonate Plaintiff. Other email accounts used anonymously by Defendants for illegal activities and/or impersonating Plaintiff include newtown2amazon@gmail.com, therealjonreich@gmail.com. The details of these communications could not be attached, at

---

[12] Exhibit 2 – Letter of New York City Police Department Sergeant Paul Muggeo [July 25, 2016]
[13] "Vlad the Impaler." Encyclopædia Britannica, Encyclopædia Britannica, Inc., 1 Jan. 2020, www.britannica.com/biography/Vlad-the-Impaler.

present time, without placing Plaintiff and Plaintiff's family in further potential danger.

## ATTORNEY CHRISTOPHER GROTZ BECOMES INCAPACITATED AND DEFENDANTS LOOK TO EXPLOIT THE SITUATION

55. On or about October 15, 2016, Attorney Grotz suddenly becomes incapacitated, and is no longer reachable to Plaintiff. Defendants look to exploit the situation.

56. On October 26, 2016, at 4:19 PM, an e-mail was accidentally sent to the wrong party by James Viadero, the police chief in Newtown, Connecticut. The intended recipient of the e-mail is an attorney at the law firm originally hired as defense counsel for Plaintiff, the very same law firm who has been actively working against Plaintiff for several years. Viadero writes "Good job on the response... Thanks. Also __<Redacted>__ Riecht last week. Nothing we can get a warrant for." This e-mail demonstrates that Plaintiff was being targeted with additional false charges in Connecticut as early as October 26, 2016. The Defendants maliciously concealed these details from Plaintiff and from the court in Queens County.[14]

## PLAINTIFF IS FALSELY ARRESTED AS A "FUGITIVE"

57. On November 21, 2016, at about 3:00 AM, NYPD 107th Precinct officers and U.S. Marshals entered a private residence in Queens County. Defendants did not present a valid arrest warrant and took Plaintiff away in handcuffs and footcuffs. Defendants accused Plaintiff of being a fugitive on the run from justice for about one year, even though they knew exactly where to find him the whole time. Defendants clearly understood that Plaintiff was not a fugitive. When an actual "fugitive" Defendants went to his home of record, the same address on on his state-issued ID and in their database. Defendants then

---

[14] Exhibit 10 – James Viadero Email, Redacted [October 26, 2016]

led Plaintiff into the backseat of an undercover vehicle. Plaintiff was effectively kidnapped.

58. Plaintiff is then transported to the NYPD 107th Precinct and processed in a fast-paced manner. Plaintiff is taken to central booking under the courthouse. Plaintiff is photographed, laser fingerprinted, Plaintiff's eyes are retina scanned and his shoes and possessions are taken from him. Miranda rights were never read or stated to Plaintiff. According to the The Legal Aid Society, their organization exists for one simple yet powerful reason: "to ensure that no New Yorker is denied their right to equal justice because of poverty." Their organization completely refused to assist Plaintiff or attempt to provide any legal defense, they immediately assumed position and attempted to take actions that would assist with the prosecution of their own 'client'.

59. A female attorney by the name of Arielle Adams of the 'Legal Aid Society' introduces herself to Plaintiff, she explains that he is charged with being a 'Fugitive From Justice' or in other words a person actively on the run from the law, usually people who escaped custody of law enforcement. Adams, his so-called 'defense attorney' states that Plaintiff should "sign an extradition waiver" so that he can be promptly returned to Connecticut to face the charges. Plaintiff stated that he has confirmed with the NYPD that he was a free man many times over the past year and that the charges were false.

60. Plaintiff states that he was not on the run or a fugitive and has proof in the form of digital audio and video recordings of NYPD officers on official communication lines and NCIC (National Crime Information Center) checks. Adams then brought another female attorney into the room and the two of them recommended again that Plaintiff sign the documents that they had brought him. The two attorneys state that if he doesn't sign the papers he is going to be brought to Riker's Island and held for thirty (30) days for the Queens County

District Attorney's Office to produce a governor's warrant.

61. Plaintiff refuses to sign any waiver and the attorneys leave Plaintiff in a holding cell for a long period of time. Plaintiff is brought before a judge who set conditions of no bail for this alleged misdemeanor in another state, of which they have no paperwork or evidence, and who did so with no New York arrest warrant. The court sets another court date and deadline for a possible extradition to take place. Not allowing bail for an unknown and unproven misdemeanor allegation is completely illegal.

62. On or about November 21, 2016, quickly after Plaintiff is arrested, hazardous materials are dropped off on Plaintiff's property by associates of the Defendants for purposes of threatening, harassment, and intimidation. This is promptly reported to the New York City Police Department 107th Precinct, who negligently refuse to investigate the matter.

63. On or about November 22, 2016, Plaintiff's first defense counsel in Connecticut suspiciously files an extensive complaint against Plaintiff for a website domain name, <Redacted>.com. The website's purpose was to provide, reliable and accurate information about this matter and the unethical actions of the defense counsel, to the public.[15]

64. On or about January 20, 2017, Detective David Hicky #1070 of the Connecticut State Police writes to "The Honorable Andrew M. Cuomo" regarding "The Extradition of Jonathan Reich." The letter has false information and mentions a "New York County Criminal Court." The letter specifies a short time frame, as Defendants purposely delayed filing their documents because of the criminal nature of their activities, as well as to use the out-of-state misdemeanor extradition hold loop-hole they planned to exploit. Detective Hickey writes "The 90th day is 02/18/17."

---

[15] Exhibit 17 – Plaintiff's Original Defense Counsel Files Suspicious Complaint

65. Defendants assembled and fast-tracked a Governor's Warrant, purposely loaded with a false narrative and false information, at the last minute, around February 23, 2017. Plaintiff was given no opportunity to review the information and it was produced on the day of the illegal extradition.

66. On September 14, 2017, Plaintiff requested several public records from Governor Andrew M. Cuomo's extradition office pursuant to New York's Freedom of Information Law. After being responsible for holding an innocent detainee with no bail for over ninety (90) days, Cuomo is unable to publicly account for all the taxpayer funds spent on the fruits of his negligence.

67. Cuomo's office refused to produce basic public records with "statistics of how many people were extradited by the New York Governor's Office over the past 5 years... how many people were extradited for misdemeanors and how many for felony accusations... accounting of the taxpayer cost of the extradition of Jonathan Reich." Pursuant to New York Consolidated Laws, Public Officers Law - PBO § 84, these statistics are clearly a matter of public record.

68. On or about September 20, 2017, Plaintiff hires Attorney Edward Eiseman (deceased at age 33, September 7, 2018 in New York) to pursue legal action in this matter.

69. On December 20, 2017, A 50-H Hearing is conducted regarding this matter referenced to as Claim Number 17PI014465. Attorney Edward Eiseman represents Plaintiff at the 50-H hearing. Eiseman suddenly passed away in 2018 and Plaintiff found new counsel soon after, Courtney Davy, who as of recently is no longer representing Plaintiff.

70. Governor Andrew M. Cuomo effectively approved the kidnapping of an innocent New York resident from their home at 3:00 AM based on an unfounded and unproven

misdemeanor allegation. The individual is then assaulted, handcuffed, and foot-cuffed and chained and then held with no bail on an alleged, unproven, misdemeanor violation from out of state that is in the same class as littering or a parking ticket. The individual is then illegally held without bail for over 90 days outside the confines of law and denied access to counsel. Plaintiff was arrested on November 21, 2016 and incarcerated until being extradited on or about February 23, 2017, a period exceeding 94 days.

71. Pursuant to New York Criminal Procedure Law – CPL § 570.16, a "person so surrendered will be held to answer no criminal charges of any nature except those set forth in the requisition upon which such person is so surrendered." This was clearly violated by the Defendants, who submitted falsified sworn declarations that there were no other criminal charges. There were extra false charges waiting in Connecticut that were pre-planned and utilized as a reinforcement to the illegal extradition process, that New York was not notified of deceptively by Connecticut.

72. The Defendants including multiple employees of the Queens County District Attorney's Office, are responsible for malicious prosecution and many violations of CPL 570. Defendants failed to follow CPL § 570.40 and should have never even arrested Plaintiff as this was all done with malicious intent and outside of the law. Defendants falsely arrested Plaintiff with no New York charges or arrest warrant and did not release Plaintiff on the 90th day as required by law. Defendant's also maliciously submitted false information in a governor's warrant without the ability to review or dispute the information, via an extradition hearing, which did not take place, but was requested.

73. Plaintiff refused to sign an extradition waiver and demanded an extradition hearing and it was never conducted, which is a violation of Plaintiff's civil and Constitutional rights.

Defendants also included false information in the governor's warrant proclaiming that Plaintiff was charged/convicted, which is clearly false based on the timeline.

74. Upon information and belief, exculpatory material regarding the Plaintiff's arrest was in the possession of the Queens District Attorney's Office and it failed to turn over such exculpatory evidence in a timely manner and purposely concealed it. The failure to turn over Brady exculpatory material for 95 days was more than wrongful conduct by one ADA. It was perpetuated and ratified by high level officials in the Queens District Attorney's Office, who tried to cover up the misconduct, and failing that, withheld additional exculpatory evidence.

75. This alleged misconduct by the Queens District Attorney, by concealing exculpatory evidence, favoring the defense, has a long history and has been the subject of prior lawsuits.

76. Because the Queens District Attorney is a policy maker for the City of New York with respect to the administration of that office, the unlawful policies and practices complained of in tolerating such misconduct was the moving force and proximate cause of the Plaintiff's detention for ninety-five (95) days and the City is therefore liable to the Plaintiff pursuant to Monell v. City of New York and 42 U.S.C. § 1983.

77. Furthermore, the entire false arrest and incarceration was unfounded and is a major injustice for all New Yorker's who financed this horrible abuse of the police force. The Defendants engaged in official misconduct and conducted business with reckless disregard for the constitutional rights of taxpayers and New York citizens.

**AS AND FOR A FIRST CAUSE OF ACTION AGAINST DEFENDANTS, PLAINTIFF RESTATES AND REALLEGES EACH AND EVERY ALLEGATION SET FORTH IN PARAGRAPHS MARKED AND ENUMERATED "1-77" AND FURTHER ALLEGES AS FOLLOWS:**

78. Upon information and belief, the actions taken as aforesaid by Defendant Police Officer John Fogelman was an unreasonable search and seizure in violation of the Fourth Amendment and a deprivation of liberty without due process of law under the Fifth and Fourteenth Amendments.

79. Upon information and belief, Defendant Police Officer John Fogelman, acted with actual malice toward the Plaintiff and with willful and wanton indifference and deliberate disregard for the statutory and constitutional rights of the Plaintiff.

80. Solely by reason of the above, the Plaintiff sustained severe personal injuries, was rendered sick, sore, lame and disabled, sustained severe nervous shock and mental anguish, great physical pain and emotional upset, some of which injuries are permanent in nature and duration, and Plaintiff will be permanently caused to suffer pain, inconvenience and other effects of such injuries; Plaintiff incurred and in the future will necessarily incur further hospital and/or medical expenses in an effort to be cured of said injuries; and Plaintiff has been and continues to be unable to pursue the usual duties with the same degree of efficiency as prior to this incident, all to Plaintiff's great damage.

81. That by virtue of the foregoing, Plaintiff has been damaged in the amount of TEN MILLION [$10,000,000.00] DOLLARS.

**AS AND FOR A SECOND CAUSE OF ACTION AGAINST DEFENDANTS, PLAINTIFF RESTATES AND REALLEGES EACH AND EVERY ALLEGATION SET FORTH IN PARAGRAPHS MARKED AND ENUMERATED "1-81" AND FURTHER ALLEGES AS FOLLOWS:**

82. Upon information and belief, the actions taken as aforesaid by Defendant Police Officer John Fogelman, and other to date unknown Police Officers who arrested the Plaintiff, constituted an unreasonable search and seizure and deprivation of liberty without due process of law.

83. Upon information and belief, Police Officers in the New York City Police Department have falsely arrested people.

84. Upon information and belief, the 107th Precinct required its Officers to meet a quota of arrests at times prior to the date of the arrest of the Plaintiff herein.

85. Upon information and belief, at all times pertinent hereto, New York City permitted and tolerated a pattern and practice of unreasonable search and seizures, stop and frisks, denial of prompt medical treatment, and deprivations of liberty without due process of law by Police Officers of the City of New York.

86. Upon information and belief, the City of New York has maintained a system of review of this police conduct which is so untimely and cursory as to be ineffective and which permits and tolerates the unreasonable stop and frisks, search and seizures and deprivations of liberty without due process of law by Police Officers.

87. At all times pertinent hereto, Defendants Police Officer John Fogelman and other unknown Police Officers who were involved in the arrest of Jonathan Reich, were acting within the scope of their employment and pursuant to the aforementioned policies and practices of the City of New York. These policies and practices which were enforced by Defendant City of New York were the moving force, proximate cause, or the affirmative link behind the conduct causing the stop of the Plaintiff and the Plaintiff's subsequent injuries.

88. The City of New York is therefore liable for the violations of Plaintiff's constitutional rights by Defendants Police Officer John Fogelman and other Police Officers involved in his arrest.

89. That by reason of the foregoing, the Plaintiff has been damaged in an amount which

exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

**AS AND FOR A THIRD CAUSE OF ACTION AGAINST DEFENDANTS, PLAINTIFF RESTATES AND REALLEGES EACH AND EVERY ALLEGATION SET FORTH IN PARAGRAPHS MARKED AND ENUMERATED "1-89" AND FURTHER ALLEGES AS FOLLOWS:**

90. Upon information and belief, acting individuals on behalf of the Queens District Attorney and ADAs withheld favorable material evidence from the Plaintiff and his attorney, presented false and misleading testimony and argument against the Plaintiff at his case, failed to correct such testimony and argument, acted to conceal the aforementioned wrongdoing from the Plaintiff and his attorney, and perpetuated and ratified such misconduct during the trial of the Plaintiff.

91. Defendants blatantly violated Plaintiff's rights and collaborated with agents from out-of-state who were targeting Plaintiff with threats of bodily injury and death, aggravated harassment, and trespassing on Plaintiff's property.

**AS AND FOR A FOURTH CAUSE OF ACTION AGAINST DEFENDANTS, PLAINTIFF RESTATES AND REALLEGES EACH AND EVERY ALLEGATION SET FORTH IN PARAGRAPHS MARKED AND ENUMERATED "1-91" AND FURTHER ALLEGES AS FOLLOWS:**

92. Defendants permitted fraudulent documents and fraudulent instruments to be used against Plaintiff, including false sworn statements located within a Governor's Warrant by Honorable New York Governor Andrew M. Cuomo. Perjured statements include certifications that no other charges exist when Defendant was using the extradition process to deny Plaintiff due process of law. The Governor's Warrant contained maliciously false sworn statements, and incomplete and altered police reports and affidavits.

93. No proper investigation was conducted by Andrew M. Cuomo and his extradition office leading to an unlawful extradition, Cuomo's signature on falsified paperwork, with no extradition hearing or ability to dispute withheld evidence, outside of the statutes of CPL 570 and New York State law.

94. The particular incident referenced was investigated by the Connecticut State Police and in the State of Connecticut Department of Emergency Services and Public Protection Report No. 1200704559-00054069, Investigator TFC Michael A. Downs (Badge No. 0502) who examined the information found "there does not appear to be a violation of any sort."

95. Plaintiff was subjected to inhumane and physically damaging conditions at Rikers Island, including being exposed to harmful mold conditions and poor air quality. Plaintiff was denied safe drinking water and food that was safe to eat according to Plaintiff's dietary restrictions. Plaintiff was denied reasonable medical care and denied medications he was taking prior to this unlawful incarceration.

96. Plaintiff was forced to wear an identification tag with the word "Jewish" on it placing Plaintiff in unnecessary harm's way and violating his rights to freedom of religion.

97. Plaintiff sustained severe and substantial bodily injuries due to the misconduct of Defendants including, forced withdrawal of blood, starvation, denial of clean drinking water, denial of kosher foods, substantial injuries to the groin and abdomen, injuries to Plaintiff's respiratory system due toxic substances being sprayed into the air, and denial of medical care.

98. The Queens District Attorney knows to a moral certainty that is employees, the

Assistant District Attorneys and individuals acting on their behalf, will face a given situation; that the situation presents its employees with a difficult choice of the sort that training or supervision will make less difficult and that there is a history of employees mishandling the situations; that the wrong choice by the City employee will frequently cause the deprivation of a citizen's constitutional rights and that the extent of such managerial inadequacies manifests deliberate indifference to the federal constitutional rights of the Plaintiff.

99. The aforesaid conduct operated to deprive plaintiff of his rights under the Federal and State Constitution and the laws of the United States and New York State.

100.    The Queens District Attorney and ADAs failure to timely disclose for use at trial all material evidence favorable to his defense, pursuant to Brady v. Maryland, 373 U.S. 83 (1963); the Queens District Attorney and ADAs used false or misleading testimony or argument knowingly and/or recklessly presented by prosecutors in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments; the Queens District Attorney and ADAs violated the plaintiff's right to a fair trial pursuant to the Fifth, Sixth and Fourteenth Amendment; the Queens District Attorney and ADAs violated the Plaintiff's right to be free from an illegal search and seizure by arresting him with evidence that was exculpatory to him; as a result of the arrest, and the presentation of false evidence and/or failure to provide exculpatory evidence for an indefinite time frame after his arrest, violated his Constitutional Rights.

101.    Defendant Assistant District Attorney George DeLuca-Farrugia, the Director of Extraditions, Renditions and Property Releases at the Queens District Attorney's

Office maliciously targeted Plaintiff and perpetuated knowingly false allegations and statements against Plaintiff while withholding exculpatory evidence and presenting lies to judges.

102.     The foregoing violated the Plaintiff's constitutional rights by actions taken under color of State Law.

103.     The foregoing violations of the Plaintiff's constitutional rights were directly, proximately and substantially caused by conduct, chargeable to the City of New York, including the institution and implementation of unlawful policies, procedures, regulations, practices and/or customs concerning the continuing obligation to make timely disclosure to the defense, before and during the trial of material evidence favorable to the defense; the duty not to present at trial false, misleading improper or unreliable evidence, testimony, statements or argument; the continuing obligation to correct false inaccuracies, incomplete or misleading evidence, testimony, statements or argument, whenever such acts occurred, and to remedy the harm caused by such acts, and deliberate indifference by policymaking officials at the Queens DA's office in its obligation to properly train, instruct, supervise and discipline its employees, including the ADAs involved in the prosecution of the Plaintiff's case, with respect to such matters.

104.     Upon information and belief, the Queens District Attorney and its ADAs have a policy, express or implied, to permit and encourage its ADA's to withhold exculpatory evidence from defendants and its counsel, to cover up the withholding of exculpatory evidence, to orchestrate cover ups, to devise false versions of events, and that this policy has been indoctrinated into the Queens District Attorney's

Office so that ADAs in the course of their duty are more likely to withhold exculpatory evidence during the course of a trial.

105.    Upon information and belief, the Queens District Attorney and its ADAs has furthered and implemented this policy, by maintaining a system of review of its ADA's conduct, and had notice of, but repeatedly failed to make any investigations into, charges that employees were violating citizens' constitutional rights, which is so untimely and cursory as to be ineffective, and which permits and tolerates the withholding of Brady Material, and violations of the Constitution and deprivations of liberty without due process of law.

106.    At all times pertinent hereto, the ADAs prosecuting the Plaintiff herein were acting within the scope of their employment and pursuant to the aforementioned policies and practices of the Queens District Attorney's office. These systemic policies and practices which were enforced by the Queens District Attorney's office were the moving force, proximate cause, and/or the affirmative link behind the conduct causing the withholding of Brady material, thereby resulting in the Plaintiff's 95 days of incarceration and his resultant injuries.

107.    The City of New York is therefore liable for the violations of Plaintiff's constitutional rights by the District Attorney of Queens County, personally and through his authorized ADAs.

108.    Prior to his arrest and detention, Plaintiff was in regular communications with police officers of his local precinct in the City and State of New York, County of Queens via phone call and in-person meetings. During those calls and meetings, Plaintiff inquired on numerous occasions about the existence of any open warrants

for his arrest. During said calls and meetings, Plaintiff was informed that there were no open warrants for his arrest. Notwithstanding the aforementioned, on November 21, 2016, Plaintiff was forcibly arrested with the use of excessive force resulting in bruising and pain for Plaintiff's shoulders, back, arms, and ankles.

109.    Although posing no treat of escape or danger to society, Plaintiff was falsely arrested and held without bail for more than 95 days in New York City Rikers Island Correctional Facility. While incarcerated, Plaintiff also suffered additional physical and psychological injuries as a result of the correctional facility.

110.    Plaintiff is Jewish and while held at the above correctional facility and subsequent facilities due to Defendants deliberate abuses of the police department and District Attorney's offices, was made to eat a diet of non-kosher food notwithstanding numerous requests for a kosher diet, in violation of his first amendment right and religious practices and civil rights.

111.    That by reason of the foregoing, the plaintiff has been damaged in an amount which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction.

**WHEREFORE,** Plaintiff demands Judgment as follows:

I.   Judgment on the First, Second, Third, and Fourth Causes of Action against Defendants, John Fogelman, George Deluca-Farrugia, John Does #1-8, and Andrew M. Cuomo, jointly and severally liable, in the amount of TEN MILLION ($10,000,000.00) DOLLARS;

II.  Judgment on the First, Second, Third, and Fourth Causes of Action against Defendants, John Fogelman, George Deluca-Farrugia, John Does #1-8, and Andrew M. Cuomo, in an amount which exceeds the jurisdictional limits of all lower courts which would otherwise have jurisdiction;

III. Judgment for Punitive Damages against Defendants, John Fogelman, George Deluca-Farrugia, John Does #1-8, and Andrew M. Cuomo, jointly and severally liable, in the amount of TEN MILLION ($10,000,000.00) DOLLARS;

IV.  Together with the costs and disbursements of this action, for reasonable attorney's fees under the applicable Federal Statutes, and for such other and further relief as to this Court seems just and proper.

Respectfully submitted,

Jonathan Reich
Plaintiff, *Pro Se*
7210 136th St.
Flushing, NY 11367


Dated: 10/5/2020

# EXHIBIT 1

Case 1:19-cv-06491-EK-RER   Document 19   Filed 10/05/20   Page 31 of 113 PageID #: 189

SUPREME COURT OF THE STATE OF NEW YORK     Index Number
COUNTY OF NEW YORK
———————————————————————X

JONATHAN REICH

      Plaintiff                                                    **SUMMONS**

-against-

CHARLES C. HALE, WARREN ST. JOHN,  JESSICA
L. SAWYER, DMEP CORPORATION D/B/A HALE
GLOBAL, PLANCK, LLC D/B/A PATCH MEDIA,
PATCH MEDIA CORPORATION

      Defendants
———————————————————————X

To the above-named Defendants:

      YOU ARE HEREBY SUMMONED and required to serve upon Plaintiffs'

attorney an answer to the Verified Complaint in this action within twenty (20) days after

the service of this summons, exclusive of the day of service (or within thirty (30) days

after the service is complete if this summons is not personally delivered to you within the

State of New York). In case of your failure to answer, judgment will be taken against you

by default for the relief demanded in the Complaint.

      The basis of the venue designated is Defendants offices in New York County, and

CPLR §509.

Dated: New York, New York
August 10, 2016

THE WILDER LAW FIRM, PC

_____

By: NICK WILDER
*Attorney for Plaintiff*
17 East 67 Street., Suite 4D
New York, NY 10065
(212) 951-0042

To:

Defendant DMEP Corporation, d/b/a Hale Global
139 East 63d Street, 14th Floor
New York, New York 10065

Defendant Charles Hale
139 East 63d Street, 14th Floor
New York, New York 10065

Defendant Planck, LLC, d/b/a Patch Media
c/o Patch Media
134 West 29th Street, 11th Floor
New York, New York 10001

Defendant Warren St. John
Patch Media
134 West 29th Street, 11th Floor
New York, New York 10001

Defendant Jessica L. Sawyer
Patch Media
134 West 29th Street, 11th Floor
New York, New York 10001

Defendant Patch Media Corporation
Patch Media
134 West 29th Street, 11th Floor
New York, New York, 10001.

2

SUPREME COURT OF THE STATE OF NEW YORK     Index Number
COUNTY OF NEW YORK

—————————————————————X

JONATHAN REICH

       Plaintiff                               **COMPLAINT**

-against-                                 New York County is
                                             Designated as the Venue
CHARLES C. HALE, WARREN ST. JOHN, JESSICA   for Trial
L. SAWYER, DMEP CORPORATION D/B/A HALE
GLOBAL, and PLANCK, LLC D/B/A PATCH
MEDIA, PATCH MEDIA CORPORATION

       Defendants

—————————————————————X

      JONATHAN REICH, by and through his attorney NICK WILDER of THE

WILDER LAW FIRM, as and for his complaint against CHARLES C. HALE,

WARREN ST. JOHN, JESSICA L. SAWYER, DMEP CORPORATION D/B/A HALE

GLOBAL, PLANCK, LLC D/B/A PATCH MEDIA, and PATCH MEDIA

CORPORATION (collectively "Defendants") alleges as follows:

## **PARTIES**

      1.     Plaintiff Jonathan Reich is a natural person who at all relevant times and

presently resides in Queens County, New York.

      2.     Defendant Charles C. Hale at all relevant times was President and CEO of

DMEP Corporation d/b/a Hale Global, a parent corporation to Patch Media Corporation.

Currently Charles C. Hale is Executive Chairman of Patch Media Corporation and a

resident of New York County, New York. Defendant Hale is located at 139 East 63rd

Street, 14th Floor, New York, New York 10065.

3

3.      Defendant Warren St. John at all relevant times was Editor-In-Chief of Patch Media Corporation. Currently Warren St. John is CEO and Executive Editor at Patch Media Corporation and a resident of New York County, New York, with offices at 134 West 29th Street, New York, New York 10001.

4.      Defendant Jessica L. Sawyer, at all relevant times was a local editor for Avon Patch, a subsidiary of Patch Media Corporation, a division with offices at 134 West 29th Street, New York, New York 10001.

5.      DMEP Corporation d/b/a Hale Global, a parent corporation to Patch Media Corporation, at all relevant times was a corporation organized under the laws of the State of New York, with its principle place of business at 139 East 63rd Street, 14th Floor, New York, New York 10065.

6.      Planck, LLC, a Delaware Limited Liability Company, d/b/a Patch Media, having an office and place of business c/o Patch Media, 134 West 29th Street, 11th Floor, New York, New York 10001.

7.      Patch Media Corporation, and its Internet website www.Patch.com, is a news media and information distribution platform owned by DMEP Corporation d/b/a Hale Global. Patch Media has offices at 134 West 29th Street, New York, New York 10001.

## PRELIMINARY STATEMENT

8.      Plaintiff is an honest and law-abiding young man who had a promising future and was a college student with no criminal record. Plaintiff was accused of making threatening phone calls to individuals in the state of Connecticut. Plaintiff has never been convicted for making any type of phone calls. No evidence has ever been brought forth to the accused, his counsel, or to a court of law. Unfortunately showing great irresponsibility, Defendants made false and defamatory statements about Plaintiff.

9.      Motivated by a desire to garner attention for their marginal publication Defendants made a mountain out of a molehill, turning a non-story into a sensational headline. As a result, Patch Media got national and international attention. This was done through journalistic irresponsibility, using Plaintiff to build defamatory sensational headlines. Defendant must be held accountable for the damages proximately caused to Plaintiff by its false and defamatory stories about him masquerading as journalism.

### Factual Background

10.      Defendants wrote seven defamatory articles regarding Plaintiff published on www.Patch.com. These particular stories were put into hateful discussion about the Plaintiff over the past three years over many social media platforms and the Internet. Defendant's articles include the following:

a. 5/20/2013- "Police: Man Made Threatening Phone Calls to Connecticut Official in Farmington Valley."

b. 5/22/2013- "Police: CT Chief Medical Examiner Received Threatening Calls Referencing Newtown Shooting Probe."

c. 5/23/2013 (Avon Patch)- "Police: Man Who Harassed Connecticut Officials Believed in Newtown Shooting Cover-Up."

5

d. 5/23/2013 (Farmington Patch)- "Police: Man Who Harassed Connecticut Officials Believed in Newtown Shooting Cover-Up."

e. 5/24/2013- "Suspect Made Harassing Calls Prior to Newtown-Related Incidents, Police Say."

f. 5/24/2013 (Newtown Patch)- "Police: CT Chief Medical Examiner Received Threatening Calls Referencing Newtown Shooting Probe."

g. 12/26/2013- "Top Stories: Man Threatens State Officials Post-Sandy Hook."

11.      The 5/20/2013 article referred to Plaintiff by name repeatedly and included personal information including his family's home address, his age, and Plaintiff's booking photo. This detailed information was not verified via proper procedural legal identification.

12.      The article published on 5/22/2013 claimed that Plaintiff made "threatening calls" to the Chief Medical Examiner, H. Wayne Carver II. This is false. No threats were ever made. This negligently and carelessly drafted and published article included alleged witnesses names, which were unauthorized for release, due to the pending case status. Next, after stating that a policeman had received threating calls the article claims "it is not clear whether Reich is *also* responsible for those calls" (emphasis added). The use of the word "also" implies that IN FACT Mr. Reich was responsible for threatening calls to Dr. Carver. He was not responsible for threatening calls to Dr. Carver.

13.      Defendants operate purely as a profit-pursuing business enterprise- NOT a serious journalistic endeavor. This lack of journalistic ethics is reflected and demonstrated in these stories. Patch is essentially an "infomercial"- whose primary objective is marketing, advertising, business, and profits.

6

14.     The article published on 5/23/2014 stated: "Man Who Harassed Connecticut Official Believed in Newtown Shooting Cover-Up". The article refers to this man as Jonathan Reich, the Plaintiff. This statement falsely claims as a factual matter that Mr. Reich "harassed" Dr. Carver. The article stated that Plaintiff had also contacted a police officer "for the purposes of harassment, regarding the Newtown incident." This is a false statement. Mr. Reich never "harassed" anyone including any police officer.

15.     Moreover the article stated "State Police Lt. J. Paul Vance is the other state official who received similar calls, police said in the arrest warrant application." This demonstrates unlawful access to an internal police document, the arrest warrant application, by DMEP Corporation d/b/a Hale Global.

16.     The article published on 5/23/2013 stated that "Police said that people setting up charitable organizations for victims of the Newtown incident also received harassing calls. The Avon Police Department stated that a Durham family that was receiving daily phone calls reported it to the Connecticut State Police Resident Trooper's Office." Malicious intent is found when publishing witness names and details not authorized to be published according to Avon Police Department procedures, and through the controlled release of pre-written articles.

17.     Critically, and outrageously, Defendants demonstrated malicious intent by excluding several supporting police affidavits, including Connecticut State Police (State of Connecticut Department of Emergency Services and Public Protection) Report No. 1200704559-00054069 which stated with Reference to Plaintiff **"there does not seem to be any violation of any sort"**.

7

18.     The same article stated: "The suspect also called Carver's Farmington office at the UConn Health Center on Feb. 6 and told a secretary to tell Carver that 'he has a problem and that he would keep calling', police said. He told her he had 'proof' that Carver did not perform autopsies on the Newtown victims and that he was covering up the incident." The particular incident referenced was investigated by the Connecticut State Police and in State of Connecticut Department of Emergency Services and Public Protection Report No. 1200704559-00054069, Investigator TFC Michael A. Downs (Badge No. 0502) who examined the case found **there does not appear to be a violation of any sort."**

19.     This same article stated "Reich himself is Jewish" releasing libelous and unverified information that was not eligible to be released to the public via press release. DMEP Corporation d/b/a Hale Global did not contact Plaintiff or his legal counsel for comment or to verify information before publication. The Article states "Jonathan Reich, 22, who was 'radical' in his Jewish beliefs, also harassed her and her roommates on a school trip to Israel." This statement is false. First, there is nothing "radical" about Plaintiff. Moreover, Plaintiff has never participated on a school-sponsored trip to Israel, and he certainly never harassed anybody on any school-sponsored trip to Israel- which never occurred in the first place.

20.     DMEP Corporation d/b/a Hale Global did not make contact with Plaintiff or Plaintiff's counsel to verify information published. Articles published by Defendants are patently false and libelous on their face. The article falsely and with no basis, portrays Plaintiff as some form of religious nut.

8

21.    The Article dated 12/26/2013, "Top Stories: Man Threatens State Officials Post- Sandy Hook" refers to the Plaintiff. The article states: "New Yorker Makes Threatening Calls to State Officials Post-Sandy Hook (May) Avon police arrested Jonathan Reich, of New York, after he reportedly made threatening phone calls to former chief medical examiner Dr. H. Wayne Carver II, of Avon, and State Police Lt. Paul Vance about the Sandy Hook school shooting investigation."

22.    These outrageous statements are patently false. Plaintiff never made any threats to anybody.

23.    As hoped by Defendants, these sensational claims reported in their publication, resulted in widespread dissemination internationally, through news media outlets, social media platforms and organizations. Since publication, online and in-person entities have stalked and harassed the Plaintiff and Plaintiff's family.

24.    Defendants published information in a series of articles, which subjected Plaintiff to be targeted by various members of the public. This information included Plaintiff's family home address and has led to threats of intimidation, stalking, and harassment of Plaintiff and Plaintiff's family.

25.    As a result Plaintiff has suffered terrible harm to his reputation, economic prospects, damage to his career prospects, social stigmatization and ridicule, and painful emotional and physical distress and suffering.

26.    On August 24, 2015, Plaintiff sent a complaint to the Patch editor and author of the series of articles, Jessica L. Sawyer, via certified mail and e-mail; however, as of the present time, the articles remain published and available to the public.

9

## First Cause of Action (Libel per se)

27.     Paragraphs 1-26 are restated and incorporated as if set forth fully herein.

28.     In order to garner attention for its flagging publication, Defendants made sensational claims that Plaintiff is a criminal. The articles repeatedly stated that Plaintiff had "threatened" Dr. Carver. This is false. Defendants repeatedly stated that Plaintiff made "harassing" phone calls to Dr. Carver. This is false. Defendants repeatedly stated that Plaintiff made "threatening" and "harassing" phone calls to a police officer and to families of the shooting victims. These statements are false. Defendants repeatedly stated that Plaintiff "harassed" a girl on a school-sponsored trip to Israel. Plaintiff never even went on a school-sponsored trip to Israel. Defendants described Plaintiff as a criminal. He isn't. Defendants publication of false claims that Plaintiff is a criminal constitutes libel per se, for which they are liable.

## Second Cause of Action (Defamation)

29.     Paragraphs 1-28 are restated and incorporated as if set forth fully herein.

30.     The articles all specifically refer to Plaintiff by name, Jonathan Reich.

31.     Defendants published statements which were patently false and harmful. The articles repeatedly stated that Plaintiff had "threatened" Dr. Carver. This is false. Defendants repeatedly stated that Plaintiff made "harassing" phone calls to Dr. Carver. This is false. Defendants repeatedly stated that Plaintiff made "threatening" and "harassing" phone calls to a police officer and to families of the shooting victims. These statements are false. Defendants repeatedly stated that Plaintiff "harassed" a girl on a school trip to Israel. Plaintiff never even went on a school trip to Israel. Defendants described Plaintiff as a criminal. He isn't.

10

32.     Defendants publication of false claims that Plaintiff was "harassing" and "threatening" all kinds of people were done with malicious intent, or at a minimum reckless negligence.

33.     Defendants had no privilege permitting publication of such false statements.

34.     Defendants proximately caused damage to Plaintiff through its publication of false claims that Plaintiff was "harassing" and "threatening" all kinds of people.

35.     Anybody who ever Googles or inputs Plaintiff's name into any Internet search engine will be met with these irresponsible stories. These are inherently damaging statements, and have caused Plaintiff to suffer loss of economic opportunities, scorn, derision, hatred, harassment, difficulty finding employment, deep emotional pain, and even resulted in physical harm. They have interfered with this young man's education and career prospects and his entire life.

### Third Cause of Action (Injunctive Relief)

36.     Paragraphs 1-35 are restated and incorporated as if set forth fully herein.

37.     Defendants willful and malicious defamatory statements about the Plaintiff    constitute libel per se for which they are answerable for damages under New York State law.

38.     Defendants must immediately remove such statements from all websites under their control and issue appropriate retraction articles on all Patch website pages under their control and any distribution that would have been affected by their actions,

11

Defendants must be enjoined from continuing to issue libelous and defamatory statements about the Plaintiff.

### Fourth Cause of Action (Inciting Religious Discrimination)\

39.     Paragraphs 1-38 are restated and incorporated as if set forth fully herein

40.     Pursuant to Article 15 of New York's Executive Law (New York's "Human Right's Law"), Defendants have aided and abetted religious discrimination against Plaintiff.

41.     The above-mentioned articles dated May 23, 2013 and May 24, 2013 provoke hatred and religious discrimination from the public against the Plaintiff. After describing him as "harassing" and "threatening" Defendants state "Reich himself is Jewish."

42.     The articles state "Woman tells police that suspect Jonathan Reich, 22, who was 'radical' in his Jewish beliefs, also harassed her and her roommates on a school trip to Israel." Plaintiff has never attended a "school-sponsored trip to Israel". Defendants exhibiting great bigotry portrayed Plaintiff as a religious nut and provoked anti-Semitism.

43.     As a result Plaintiff and his family members have been targeted at the home address published by the Defendants and on online websites and social media platforms, with the intent to intimidate, threaten, trespass on private property, and express anti-Semitism.

44.     The statements contained within the news articles have subjected Plaintiff to "trial-by-media" and exposed Plaintiff to civil rights violations and discriminatory treatment within the Hartford Judicial System by State Employees, targeting Plaintiff for over three (3) years. Defendants impeded Plaintiff's right to a fair jury trial by swaying the public's opinion of Plaintiff before arraignment, revealing alleged witness names, and carelessly endangering and revealing alleged witnesses.

45.     As a direct and proximate result of the above-described publications, authored and disseminated nationally and internationally by the Defendants, Plaintiff has suffered injury to his reputation, reputation of family members, serious mental anguish, severe and substantial emotional distress, economic hardship, loss of religious freedom, emotional pain and suffering, damage to his physical health, medical costs, deprivation of civil rights, and loss of the capacity for the enjoyment of life.

WHEREFORE, Plaintiff Jonathan Reich, demands Defendants be enjoined from any further defamatory conduct, and judgment for full monetary damages against Defendants Charles C. Hale, Warren St. John, Jessica L. Sawyer, and DMEP Corporation d/b/a Hale Global, jointly and severally liable, plus legal costs, pre-judgment interest, and post- judgment interest, and such other and further relief as is just, equitable, and proper.

DATED: New York, New York
        August 10, 2016

By: NICK WILDER
THE WILDER LAW FIRM, PC,
*Attorney for Plaintiff*
17 East 67 Street., Suite 4D
New York, NY 10065
(212) 951-0042

14

# EXHIBIT 2

 **POLICE DEPARTMENT**

*The City of New York*

SERGEANT PAUL MUGGEO
107th PRECINCT DETECTIVE SQUAD
71-01 PARSONS BOULEVARD
FLUSHING, N.Y. 11365
PHONE: 718-969-6785
DEPARTMENT CELLPHONE 917-943-6145
FAX: 718-969-8075

July 25, 2016

Dear Jonathan Reich,

The New York City Police Department is conducting an official investigation in regards to your complaint made stemming from 3/01/2013. In the matter of this investigation, the New York City Police Department has made several attempts to contact you via telephone and in-person, and all attempts have failed. If no contact is made, this case must be closed.

I thank you in advance on behalf of the New York City Police Department for your prompt response in this matter. Any questions regarding this request, please contact myself at the 107th Detective Squad at the above listed number.

_____
Sergeant Paul Muggeo
107th Precinct Detective Squad
N.Y.P.D

# EXHIBIT 3

**Grotz Law Office**

512 Rt. 148                                                           Fax: 1-800-893-0679
Killingworth, CT 06419                                              Cell: 860-402-0184

October 26, 2015

Captain Paul A. Valerga
NYPD – 107th Precinct
71-01 Parsons Blvd.
Flushing, NY 11365-4113

Dear Captain Paul A. Valerga,

      I am writing to you in regards to an investigation that was conducted here in Connecticut. An alleged cooperative investigation was conducted out the 107th Precinct. I am looking for confirmation as to the employment status of [               ], who allegedly partook in efforts of the investigation through helping the Avon Police Department, located in Avon, Connecticut.

      Through summation of overseeing documents with my client, Jonathan Reich, I am attempting to gain access to E-mails, letters, communications, and any and all written reports transmitted between the Avon Police Department and [             ] and any other employee or officer assigned in the assistance of this investigation. My client resides at [              ], and he is also a resident of your local 107th Precinct.

In the defense of my client's pending case, I am hereby requesting:

1. Copies of any and all communications between NYPD and the Avon Police Department regarding Avon Police Case #1300000765

2. Copies of digital recordings of any and all phone calls between NYPD and the Avon Police Department, including any police department issued mobile phones, regarding Avon Police Case #1300000765

3. Copies of any and all written authorizations to assist the Avon Police Department with Avon Police Case #1300000765

4. A copy of the NYPD policy as of January 1st, 2013, and any subsequent updates to the policy regarding interstate operations, cooperation agreements and protocols for police investigations pursuant to State of New York and State of Connecticut statutes in regards to a Class C Misdemeanor charge

5. Copies of any and all reports on [          ]'s findings that were requested by Avon Police Department on or about March 19th, 2013

6. Any and all records of case assignments, and the supervising officer/employee that assigned [          ] to interview and investigate Jonathan Reich and/or his family

Please respond via certified mail within 5 business days for verification and confirmation purposes of this letter, as this is an urgent matter. Thank you for your time and efforts in serving the community and look forward to hearing from you.

Very respectfully,

# EXHIBIT 4

**SENDER: COMPLETE THIS SECTION**

- ☑ Complete items 1, 2, and 3.
- ☑ Print your name and address on the reverse so that we can return the card to you.
- ☑ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Capt Paul Valergra
NYPD #107 Precinct
71-01 Parsons Blvd
Flushing N 11365-4113

‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

9590 9403 0437 5163 7341 65

2. Article Number (Transfer from service label)

7015 0640 0001 2339 1156

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X _____   ☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, April 2015 PSN 7530-02-000-9053

Domestic Return Receipt

# EXHIBIT 5

**Grotz Law Office**

512 Rt. 148                                          Fax: 1-800-893-0679
Killingworth, CT 06419                               Cell: **860-402-0184**


Mr. O'donovan Murphy
Director, Judicial Marshal Services
61 Woodland Street
Hartford, CT 06105



     I represent defendant, Jonathan Reich. I am requesting security camera footage of the Court building and was directed to your department for request of specific cameras on your premises for the date range November 5, 2015 until November 10, 2015, and the daily time frame of 8AM-5:30PM. My client as of recent has had indirect and perceived threats and stalking of himself, his family, and his known associates perpetrated by unknown individuals. I am requesting a copy of the security camera footage of the front entrance external camera at the GA14 Superior Court building, dealing with outside matters directly related to my client's case.



Thank you.

Sincerely,

_____418789_____
Attorney Christopher D. Grotz Esq.

November 18, 2015

I am writing to you in the most sincere regards as a courtesy to both myself and client(s) of yours, operating under the following aliases and domains: www.SandyHookFacts.com, www.Honr.com, www.WadesVids.com, www.SandyHookAnalysis.blogspot.com, Sandy Hook Facts (Youtube), Sandy Hook Facts (Google+), www.twitter.com/CWWades (Twitter), SandyHookFacts (Facebook), Honr Network (Youtube), www.twitter.com/honr_network (Twitter). This notification is to bring you up to speed on some events, which are taking place in the online community, and in-person activities that your client(s) are partaking in. I have a pending court case in Connecticut and I am unjustly receiving what are perceived threats to my name, person, friends, and family in which photos of an obscure individual holding an object in front of my home are being published to your client's social media page. Your client's social media profile photo was changed to include this identical object on or about October 3, 2015. On or about October 1, 2015 a collage of images, including several of the same object, the exterior of the front of my home in New York with the object in the photo, and several photos taken with an overhead view of my person, and other select individuals, while located in New Britain, Connecticut were posted to your client's social media profile. On several occasions, identical objects were illegally placed on my property, including those delivered via United States Postal Service (USPS) by means of Federal Mail Fraud. According to CCTV footage, my property was trespassed upon and several identical calling cards, depicted in your client's profile photo, were delivered to my property. Several packages of mail have been distributed as well in an effort to defraud the United States Postal Service and to physically and psychologically threaten individuals across the country, including my immediate family members. The objects contained within the packages appear to be the very same object depicted in your client's profile photo. Several threats against Wolfgang Halbig are associated with identical objects to the object depicted in your client's profile photo, including messages written by your client dictating that the objects are "specially prepared" indicating perceived chemical or biological hazards, and stating they would be harmful to Mr. Halbig's grandchildren. A disturbing pattern of Inter-State stalking, and threatening behavior of multiple individuals became apparent due to a collage image posted by your client(s) depicting the objects in front of another property located in New Jersey, belonging to an associate of Wolfgang Halbig.

Most recently, on or about November 10, 2015 a post was uploaded to your client's social media page referencing my court case, my name, and includes a photo of the very same object being held in front of the Hartford Superior Court, supposedly taken on or about the November 10, 2015 hearing date for my case. Numerous defamatory articles and posts have been made on your client's social media outlets with the intent to intimidate, threaten, and to make known that your client is stalking me, my known associates, and select individuals. The written articles and posts are libelous on their face, indicative of stalking, and clearly provoke threats, hatred, and religious persecution against my entire family, over the Internet, and in-person.

This is notice for you and your client(s) as a courtesy, to cease and desist persistent attacks of stalking, religious persecution, intimidating activities, defamation online, contact in-person or via USPS Federal Mail and any known association in the acknowledgment of the activities described in this communication. I am demanding a preservation of any and all evidence of communications to and from your client(s) regarding myself, including: social media posts depicting stalking of my person, family, associated individuals, related businesses, and property. This is not an accusation, however, your client(s) may be engaged directly or as an accessory to facilitate any or all of the activities described in this notice.

Attached to this correspondence is evidence of habitual stalking several different persons who reside in different states, intimidation, trespassing, and defamation, which constitute perceived threats. Evidence is not being provided in its entirety due to your client's activities and persistent threats, but will be provided during litigation if necessary. This is not an isolated incident, identical incidents have occurred in several states across the United States through the use of in-person deliveries and deliveries through mail. This letter is being sent as a courtesy in an act of prevention due to any potential further acknowledgment of similar incidents occurring without reporting them to the proper authorities. This letter is not intended for distribution to your client(s) but as for you, the attorney, to be made aware to the activities involving your client(s).

Sincerely,


Jonathan Reich







**Sandy Hook Facts**
Shared publicly  -  Nov 10, 2015

new hearing was set in reichs case .. we might see him in jail yet!!!!.
#DuckGate!!!!





**Sandy Hook Facts**

Shared publicly  -  Yesterday 7:43 PM

**+wolfgang halbig** please dont give that duck to your grand kids A(at least without a good washing).. they were apparently "specially prepared" for a certain child stalking blue honda... when that car wasnt there they settled for meathead bidondi.. just fyi.. didnt know til a few mins ago





••○○○ Sprint 🛜   4:41 PM   @ ⁕ 70% 🔋

‹ Primary

Connecticut Statewide Automated Victim Information and Notification (SAVIN) Program.

This e-mail is to inform you about a change involving the defendant JONATHAN REICH and docket number H14HCR130116876T. This defendant did not come to court and a warrant for this defendant's arrest is being processed.

For more information or assistance, contact the Office of Victim Services at 1 (800) 822-8428. Or, you can visit www.jud.ct.gov for more information.

This notification is sponsored by the Connecticut SAVIN Program. It is our hope that this information has been helpful to you.

Thank you,

The VINE Service

---

**Sandy Hook Facts**
Shared publicly · 4:43 PM

Official information release from CT. They want him BAD.

Photo details

◄1   ↪

Add a comment...

 **Sandy Hook Facts** ‣ Public                          1w

**Official Information Release from the Connecticut Justice System. The state of Connecticut clearly needs our help.**

11/25/2015

This notification is brought to you by Connecticut Statewide Automated Victim Information and Notification (SAVIN) Program.

This e-mail is to inform you about a change involving the defendant JONATHAN REICH and docket number H14HCR130116876T. This defendant did not come to court and a warrant for this defendant's arrest is being processed.

For more information or assistance, contact the Office of Victim Services at 1 (800) 822-8428. Or, you can visit www.jud.ct.gov for more information.

+1    1                                           7    

 **Sandy Hook Facts**                                      1w
Dear Lt. Vance...

 **Sandy Hook Facts**                                      1w
I believe I have a duck photo of the perps location sir.

 **HoaxCrack**                                             1w
It would be safe to assume he is armed considering the amount of time he spends on that particular issue. I think police should use extreme caution when taking him down. I would hate to see one of these officers get hurt.

 **Sandy Hook Facts**                                      1w
Good point. I would agree. If there is a manhunt, we will need to keep these officers in our prayers.

 # Sandy Hook Facts 

Add a comment

**About**     **Posts**     **Collections**     Photo

 **Sandy Hook Facts**
Public · 4 days ago

Happy Thanksgiving!

http://sandyhookanalysis.blogspot.com/
2015/11/wanted-jonathan-reich-arrest-
ordered.html

 WANTED: Jonathan
Reich Arrest Ordered,
new Halbig Biograp ...

 +5                1

 **magulater1:** Looks like Jonathan might be
spending the holidays in a cell this year.









## Sandy Hook Hoax - Room 10 Window Shots Examined



**Sandy Hook Facts**

329 views

👍 0  👎 3

**Published on Jan 21, 2015**
Sandy Hook Hoaxers incorrectly claim that the holes on the inside window frame of room 10 are exit holes because they lack fundamental knowledge of how metal reacts to rounds. I put their theory to the test conducting my own shooting test.





## Sandy Hook Hoax - Room 10 Window Shots Examined

**Sandy Hook Facts**

▶ Subscribe   199

329 views

+ Add to      < Share      ••• More

👍 0   👎 3

Published on Jan 21, 2015
Sandy Hook Hoaxers incorrectly claim that the holes on the inside window frame of room 10 are exit holes because they lack fundamental knowledge of how metal reacts to rounds. I put their theory to the test conducting my own shooting test.

# EXHIBIT 6

 Gmail

J R

## Official Complaint and Report of Criminal Activity (Class D Felony)- Connecticut Code - Sec. 53a-155.

**Jonathan Reich**                                                                 Sun, Jan 3, 2016 at 2:48 AM
To: dps.messagecenter@ct.gov
Cc: Chris Grotz <local24lawyer@hotmail.com>

January 3, 2016

Connecticut State Police Representative,

I am writing to you to file an official police complaint reporting felony tampering of official court documents, specifically regarding a date stamped judge's order with the judge's signature. I am attaching versions of the court docket information page, before and after tampering. Several complaints have been sent and received by several parties via certified mail on August 24, 2015, however all the complaints have been ignored.

This crime, as annotated through this complaint, has caused and encouraged cruel and unusual punishment, civil rights violations, religious discrimination, and malicious prosecutorial misconduct against the defendant/me. I will follow up with any documents that might be needed to assist in this investigation. There is a potential to obtain additional documents that, are not currently within the confines of the court structure, and there may be exculpatory evidence being withheld by the prosecuting authority.

Any and all supplemental police reports and written complaint forms, regarding intakes by the Connecticut State Police, have been denied to my several former and current defense counsels regarding Avon Police Department Case No. 1300000765.

On July 23, 2015 a FOIA request was sent to CSP Legal Affairs, clearly documenting that Connecticut State Police report and paid for with the purchase amount of $16.00. On the following day, July 24, 2015, a response was generated by CSP Legal Affairs indicating that they had located a case number "CFS13-00000766". On August 7, 2015 a follow-up response has that case number suspiciously removed from the subject line. I am wondering why this case was included on the July 24, 2015 letter but neglected from my defense counsel by the prosecutor Assistant State's Attorney Thomas J. O'Brien and his supervisor Carl Ajello.

There have been no court date notifications sent by the court via mail to my residence in compliance with the enforcement of the FTA charge that stands current with an excessive bail of $100,000 for a Class C misdemeanor.

Several citizens have come in to inspect the court clerk's case file record, both at the Hartford Community Court and Hartford Superior Court GA14, and approximately 40 documents that have not been available to the public have been unethically and illegally entered into the court clerk's file during the transfer of the case from Hartford Community Court to Hartford Superior Court GA14.

Sincerely,

Jonathan Reich



---------- Forwarded message ----------
From: **Jonathan Reich**
Date: Thu, Dec 31, 2015 at 11:43 PM
Subject: URGENT- JUDICIAL MISCONDUCT AT THE HARTFORD COMMUNITY COURT

Case 1:19-cv-06491-EK-RER Document 19 Filed 10/05/20 Page 68 of 113 PageID #: 226

To: jrc@ct.gov

December 31, 2015

Judicial Review Council,

The attached letter and complaint were sent to the Criminal Justice Commission on December 3, 2015. To date, there has been response from any of the recipients of the August 24, 2015 complaint as well as the December 3, 2015. I am requesting an immediate investigation into the misconduct of Assistant State's Attorney Thomas J. O'Brien, Carl Ajello, Hartford State's Attorney Gail P. Hardy in regards to felony evidence tampering, discrimination, and prosecutorial misconduct that they are promoting.

Sincerely,

Jonathan Reich

------------------

December 3, 2015

From:
Jonathan Reich

To:
Hon. Richard N. Palmer
c/o Division of Criminal Justice
300 Corporate Place
Rocky Hill, Connecticut 06067

Dear Hon. Richard N. Palmer,

I am demanding an investigation into corruption at the Hartford Community Court that has persisted for over two years for an alleged class C misdemeanor case with Judge Raymond Norko. The Hartford State's Attorney's Office has been discriminating against me for over two years with felony evidence tampering (Court docket information page), intimidation, harassment, excessive bail, civil rights violations, termination of a legal defense fund, religious persecution, cruel and unusual punishment, refusal to provide police reports for over two years, and severe corruption. Over the past two years complaints sent by members of the public as well as myself, to Hartford State's Attorney Gail P. Hardy and Carl Ajello have been ignored. I am a New York citizen and have to go through the trouble and means by emailing all of you. I apologize for needing to ask for your help, but all other channels and avenues have been exhausted.

I do not understand how an ethical Court system can deny a general Connecticut State Police report to my current attorney and former attorneys for almost 3 years. This alleged charge should have been dismissed after completing community service in 2013. I completed and submitted the documentation for community service in 2013 but it has been ignored. My attorney's request for a trial by jury has been ignored. My attorney's motion for discovery has been ignored and the State is in violation of the Connecticut Practice Book. Not only that, but I wouldn't be here today had the law firm of Pullman & Comley, notified me of a major conflict of interest that was never disclosed.

Senior Assistant State's Attorney Thomas J. O'Brien failed to ensure that the complainant "Family from Durham, CT" was properly identified in the Arrest Warrant Affidavit, so that Pullman and Comley, LLC could conduct the required conflict of interest check. Had this complainant been properly identified then a proper conflict of interest check may have been performed, indicating that Pullman and Comley, LLC was already representing the financial recipients of the "Family from Durham, CT", though Attorney Robert Morris of Pullman and Comley, LLC, who represents a Sandy Hook Charity, "My Sandy Hook Family Fund", which has made financial distributions to the same individuals that the

"Family from Durham, CT" was fundraising for. Thomas J. O'Brien was working in collusion with Pullman & Comley on this case. Pullman & Comley would have never been hired had they performed a conflict of interest check, required by the Connecticut Practice Book.

To date, the state is refusing to turn over evidence and police reports found in the attached discovery/compel motion, they have violated the Connecticut Practice Book by refusing to turn over these materials to my attorney so that he can conduct a conflict of interest check and have all the relevant materials and police reports that the prosecutor is required to provide to a defense attorney. The materials include Connecticut State Police (CSP) Report # CFS13-00000766, a general police report regarding this case that has never seen the light of day and has been refused to all 3 of my attorneys. A law passed in Connecticut (Public Act 15-164) on July 2, 2015 requires the state to provide this report during a pending case to my lawyer and to the public even, however the individuals in question are non-compliant.

Previously, on 3/10/13, the Connecticut State Police (TFC Michael A. Downes) filed in their report (Report No. 1200704559-00054069) that they had investigated the elements of this case, including one of the phone calls mentioned in the Avon Police Department report as 'harassing', stating "The caller is questioning the results of the autopsy and the policy of releasing information to the media" and found that "Based on the information gathered, there is no further investigation needed" and that "There does not appear to be a violation of any sort."

The discovery request has been ignored for almost 60 days (45 day deadline for State's Attorney, Expired- Monday November 23, 2015)

A request for video camera footage regarding a safety concern, preventing the defendant from attending a Court appearance due to active threats on Court property. The defendant's attorney appeared in Court and expressed the safety concerns, however the Court took unethical actions against the defendant. There was a failure to protect the defendant from individuals misusing the SAVIN notification system to threaten and intimidate the defendant. Carl Ajello and Gail P. Hardy continue to ignore the complaints and safety concerns.

The motion and request for a trial by jury has been ignored and never even acknowledged that it was put into the record.

The attached complaint regarding the unethical and criminal activities of Assistant State's Attorney Thomas J. O'Brien was sent on August 24, 2015, via email and certified mail, to Gail P. Hardy, Carl Ajello, Lori Gayle, Governor Dannel P. Malloy, Lt. Governor Nancy Wyman, and Attorney General George Jepsen. As of today, December 3, 2015, the complaint has been completely ignored by all recipients. The complaint has also been sent to Chief State's Attorney Kevin Kane, whom has a history of ignoring complaints regarding Assistant State's Attorney Thomas J. O'Brien sent by members of the public. I respectfully request that Chief State's Attorney Kevin Kane should not be permitted to participate in any investigation of these claims due to a conflict of interest.

In the Constitution state, I do not feel that my Constitutional rights are being addressed at all, since they have all been violated. My current attorney has only been provided with 15 pages of documents from one of several police reports and agencies. Carl Ajello and Thomas J. O'Brien refuse to provide the docket information page to my attorney, due to the fact that felony evidence tampering has occurred under their authority, Connecticut Code Sec. 53a-155. Tampering with or fabricating physical evidence: Class D felony.

All recipients, including the Connecticut House of Representatives members, are encouraged to contact me via email or mail regarding this case and the addressed issues. I would like a response at your earliest possible convenience.

Sincerely,

Jonathan Reich

_____

Case 1:19-cv-06491-FK-RER   Document 19   Filed 10/05/20   Page 70 of 113 PageID #: 228

**3 attachments**



**Docket page- after tampering.png**
1049K

**8-24-15 Tom O'Brien Complaint.pdf**
639K

**Docket Information Page - Before Tampering(1).pdf**
110K

**EXHIBIT 7**

To all parties receiving this letter,

This is being sent to you in regards to a follow-up of compliance within the Judicial System of the State of Connecticut, and to be sure that the right eyes are seeing and responding to this letter. There has been an issue of respondence of multiple parties in the past of which FOIA requests and E-mails have not been answered promptly and/or adequately. This letter is to reinforce the structure and chain of command to which the people have a right to speak and be heard.

This letter is addressed to:

August 24, 2015

Gail P. Hardy, State's Attorney
101 Lafayette Street
Hartford, CT 06106
(860) 566-3190

Dear Ms. Hardy,

For the following reasons, I am writing to you regarding the unethical and illegal practices of one of your employees, Senior Assistant State's Attorney Thomas J. O'Brien. I am seeking an immediate dismissal of my case, and reparations for the time frame of July 2014 - August 2015, during which Mr. O'Brien illegally directed my attorney to remove my legal defense fund. This took place during the court proceedings of Judge Raymond R. Norko at the Hartford Community Court.

Mr. O'Brien has recently indicated to my attorney that he is considering prosecuting charges against me for several Connecticut FOIA requests, which were sent requesting public record information.

Mr. O'Brien also denies ordering the legal defense fund's removal, despite notations of that fact in O'Brien's own handwriting on court documents. A Federal Civil Rights complaint has already been filed with the U.S. Department of Justice. Mr. O'Brien engaged in cruel and unusual punishment that caused daily suffering based on illegal orders and violations of defendant's civil rights at the Hartford Community Court.

A letter from my former attorney indicates that there was an agreement "to take down your Newtown website, which included defense fund information". There are many other violations of court procedures and the Connecticut Practice Book.

Most Hartford Community Court cases are handled within 3 months, and with few court dates, the defendant speaks to the State's Attorney and one to two days of community service are mandated, after community service is completed the defendant's case is dismissed 30 days later.

I am requesting an investigation into these complaints against Thomas J. O'Brien, Assistant State's Attorney, for obstruction of justice, judicial misconduct and conspiracy; witness intimidation and witness tampering; also, unlawful prohibition and violation of U.S. Federal Civil Rights that I should not be permitted to do any legal fundraising.

From March until May 2013 excessive phone calls from the Avon CT Police Dept. are placed to my home phone, mobile phone, and family members mobile phones. NYPD personnel are dispatched to my home on several occasions, on behalf of the Avon CT Police Dept. I was repeatedly called over 100 times and finally I was told that I was being arrested and had a $250,000 bail unless I drove to CT and would receive a $50,000 reduced bail. I am requesting a full investigation of the corruption in the Hartford Community Court and conspiracy between the Avon CT Police and NYPD.

On 5/17/13, Pullman & Comley, LLC was retained to provide legal representation for an alleged Class C misdemeanor charge that was assigned to Hartford Community Court. A Pullman & Comley employee, Sheathelm, spoke with a Detective in the Avon CT Police Department to schedule a police intake for surrender/arrest. The same day, Alan J. Sobol of Pullman & Comley, spoke with Detective Sergeant Jeffrey Gilbert to discuss extradition. Due to intimidation, I complied. Due to the fact, that I agreed to voluntarily travel from NY to CT, another licensed attorney in CT told me that no bail should have been required.

On 5/20/13, Pullman & Comley failed to instruct an attorney to appear at an authorized appointment for Arrest/Surrender, scheduled by Pullman & Comley, for 5/20/15 at the Avon Police Department. Sergeant Jeffrey Gilbert & Detective Jason Reid of the Avon CT Police Department, who had previously arranged the appointment, were able to intimidate and further threaten the defendant without legal counsel present.

Both Sergeant Jeffrey Gilbert and Detective Jason Reid of Avon CT Police Department threatened to jail me for several days at the intake due to Alan J. Sobol's failure to appear and the absence of any lawyer from the retained law firm of Pullman & Comley, who had scheduled the appointment. Reid and Gilbert had previously called my home phone, harassing my family members with over 100 calls. Someone in the Avon CT Police Department was able to obtain phone records without a warrant or ex-parte served prior, in violation of Avon CT Police, as well as Metro PCS corporate policy. The Avon CT detectives dispatched NYPD officers to my home in violation of procedure as a means of intimidation, they had inquired and stated that I was not in any trouble and had not done anything wrong. The Avon CT Detective Jason Reid did not even serve a warrant upon the defendant at intake, as required by Connecticut Practice Book, Sec. 36-5. Also, when the Connecticut State Police examined the one of the same items from the police report in March 2013, they had determined that no violation occurred.

The maximum financial penalty for a conviction of the alleged charge is $500. I was informed that many people who are alleged to have committed minor infractions (misdemeanors) has to complete several days of community service. I was singled out because I am located out of state and a researcher of public corruption. Even after submitting paperwork that several days of community service had been performed, the case was still not dismissed.

Previously, on 3/10/13, the Connecticut State Police (TFC Michael Downes) filed in their report that they had investigated the elements of this case and found that "no violation occurred." All of the calls would have been investigated by March 10th as they were obtained from the phone company in February.

Pullman & Comley failed to conduct a Conflict of Interest Check. This conflict of interest check is critical as the legal firm Pullman & Comley also represented at least one of the fundraiser charities related to Sandy Hook, an organizer of one of the Sandy Hook charities was listed as an alternate victim in this case.

I later discovered that the complainant in Avon CT who had filed a police report against me in February 2013 is now under investigation by authorities, including by the District Attorney's office in southern New York State. The complainant lied under oath in the murder trial involving a young woman who was a home health care worker and whose remains were found in December 2009 near Foxwoods Casino. The complainant has been publicly posting his social security number, home address and family members' addresses, which have been viewed by thousands of people (despite having told Avon CT Police that he was "in fear for his life").

It is still unclear whether the reported complainant, Harold Wayne Carver, ever filed an official written complaint form, since the written complaint is in multiple handwritings.

The Avon Police Report is missing several supplemental reports such as the Connecticut State Police Report (Case # 201300000766), including a written complaint from the "Family in Durham, CT". This family is responsible for illegally repurposing photos of a minor in order to solicit donations from the public. Photos of a minor stolen from a private Flickr account (family photography account), with information disseminated throughout mainstream and social media, starting December 2012, were repurposed and used to collect millions of dollars in donations. The girl's real identity is Lily Gaubert, however TransAct Technologies of Hamden, CT

willfully disseminated the photo and claimed that her legal name was Allison Wyatt. The biological mother of the minor victim had posted on many social media sites that her daughter's image was stolen from her account and illegally repurposed for use in a fraudulent non-profit scheme based in CT. Due to the theft and subsequent inter-state illegal transmission of a minor's photograph (private intellectual property), this may qualify for a federal prosecution and financial reparations to the victim and her family in Louisiana.

Lastly, which employee or contingent worker of the Hartford Court System provided information from my file, before arraignment, to Jessica Sawyer of Patch.com (owned by DMEP Corp. d/b/a Hale Global), as well as to Fox CT (owned by News Corp.)?

As a result of the unlawful, patently false, and malicious statements of the press, I was the victim of several horrific attacks against me, including Religious Persecution, Defamation, Libel, and Threats. At the time of my arrest, I was innocent until proven guilty. The reports illegally given to the press, before they were publicly available or even placed into the clerk's file, and subsequent refusal to provide the defendant with those very same reports, for over 2 years, constitute illegal activity on the part of the Hartford Community Court.

If you are a part of this E-mail/letter, I expect a response within 5 business days of receipt of this letter as to your involvement and/or explanation.

This letter has been sent to the following recipients via E-mail & Certified Mail:

State's Attorney Gail P. Hardy - gail.hardy@ct.gov
Carl Ajello - carl.ajello@ct.gov
Lori Gayle - lori.gayle@jud.ct.gov
Governor Dannel P. Malloy - Governor.Malloy@ct.gov
Lt. Governor Nancy Wyman - LtGovernor.Wyman@ct.gov
Attorney General George Jepsen - attorney.general@ct.gov
Jessica Sawyer - jessie.l.sawyer@gmail.com


Sincerely,



Jonathan Reich

1. The Hartford Community Court according to guidelines is **required to arraign defendants within 48 hours however Reich was arraigned 15 days later in violation of court procedures.**
2. Several conversations between the State's Attorney and Defense Counsel were not with the defendant present as required by guidelines.
3. **Refusal to provide photocopies of Law Enforcement Reports, Affidavits and Statements in the possession of Pullman & Comley and the State's Attorney (Police Report, and Written Complaint Form).** The Connecticut Judicial Branch Practice Book states that a prosecutor should provide photocopies of Law Enforcement Reports, Affidavits and Statements within forty-five days. Sec. 40-13A. of the Connecticut Rules of Practice.
4. **Court Dates were postponed 12 times** (between the dates of 6/5/13, 7/13/13, 9/18/13, 11/21/13, 1/29/14, 3/26/14, 5/20/14, 6/10/14, 7/22/14, 9/30/14, 11/4/14) with the excuse that the Judge was absent due to "sick days", however there was at the time, documented foreknowledge of these absences.
5. Obvious tampering with the content of the docket information, adding characters in non-cursive handwriting to change the narrative.
6. The Arrest Warrant Affidavit is incomplete given that neither box of type of Affidavit is selected. This item is obligatory for a valid police report.
7. **Over 100 incoming phone calls** to my family's home phone, cell phones, and work phones to accomplish extradition from the State of NY to CT, bypassing any NY Judge's jurisdiction.
8. To date, approximately 15 trips to Hartford CT have been sustained costing lost work time of my family. Approx. 3390 miles has been traveled to these illegal and inappropriate court proceedings. Over a period of 18 months I have to travel to Stamford every 2 weeks affecting my ability obtain a daily work schedule. Over the past 6 months, 1056 miles have been traveled to Probation meetings.
9. To date, **approximately $37,000 in legal defense costs has accumulated through the law firm of Pullman & Comley, it was later found out that there was a conflict of interest due to financial distributions of funds to certain complainants in this case, such as the "Family from Durham, CT", Pullman & Comley's fund the My Sandy Hook Family Fund has made distributions to the same individuals that have filed a complaint in this case.**
10. **Pullman & Comley, LLC** was retained on 5/17/13, to provide legal defense for an alleged Class C misdemeanor charge that was assigned to Hartford Community Court. **Arrest Date– 5/20/13: Pullman & Comley, LLC** failed to instruct an attorney to appear at an authorized appointment for Arrest/Surrender, scheduled by on **Pullman & Comley, LLC,** on 5/20/15 at the Avon Police Department. **Sergeant Jeffrey Gilbert & Detective Jason Reid of the Avon Police Department,** who had previously arranged the appointment, were able to intimidate and further threaten the defendant without legal counsel present.
11. **Illegal leak of the police report to the Press, for means of Libel & Religious Persecution, before defendant's arraignment, at a time when this report was not considered available to the public. This report was never provided to the defendant, only the press.**
12. **Thomas J. O'Brien and Pullman & Comley withheld the Police Report from the defendant for over 2 years.**
13. A copy of the **Arrest Warrant Affidavit** was not served to the defendant as required by **Connecticut Practice Book, Sec. 36-5.**
14. Refusal of Pullman & Comley to turn over any documents to my new attorney, that were provided by the Assistant State's Attorney to Pullman & Comley, in violation of Rule 1.16 of the Connecticut Rules of Practice.
15. **Illegal violation of a defendant's civil rights** to operate a **Legal Defense Fund** by the Assistant State's Attorney. Denial of use of Crowd-funding platforms or social media to raise awareness about the case or to raise legal funds.
16. **A member of the bail commissioner's office never conducted the required defendant screening for arraignment**
17. No assistance offered by Pullman & Comley from misconduct within the Hartford Community Court which doesn't even have an adult probation program, upon discussion with a probation officer who has been working there for many years who said that no one was ever sent to her office at the Superior Court from the Community Court.

**Rules of the Connecticut Practice Book violated by Thomas O'Brien:**

**Rule 3.4. Fairness to Opposing Party and Counsel**
A lawyer shall not: (1) Unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act; (2) Falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law;

**Connecticut Practice Book, Rule 3.8. Special Responsibilities of a Prosecutor**
The prosecutor in a criminal case shall: (1) Refrain from prosecuting a charge that the prosecutor knows is not supported by probable cause; (2) Make reasonable efforts to assure that the accused has been advised of the right to, and the procedure for obtaining, counsel and has been given reasonable opportunity to obtain counsel; (3) Not seek to obtain from an unrepresented accused a waiver of important pretrial rights, such as the right to a preliminary hearing;

**Connecticut Practice Book, Sec. 37-12. Defendant in Custody; Determination of Probable Cause**
(d) Unless the judicial authority entered an order limiting disclosure of the affidavits submitted to the judicial authority in support of a finding of probable cause, whether or not probable cause has been found, **all such affidavits, including any police reports, shall be made part of the court file** and be open to public inspection and copying, and the clerk shall provide copies to any person upon receipt of any applicable fee.

**Connecticut Practice Book, Sec. 36-7. Summons; Form of Summons and Complaint**
A summons and complaint issued by a prosecuting authority or law enforcement officer shall: (1) Be in writing; (2) Be signed by the person issuing it with the title of such person's office; (3) State the date of issuance and the municipality where issued; (4) Specify the name of the accused person; **(5) Designate a time for appearance not more than fourteen days after issuance;** (6) State the offense charged against the accused person; (7) State that if the accused does not appear at a specified time and place, an application may be made for the issuance of a warrant for arrest; (8) Inform the accused that he or she is entitled to be represented by an attorney; (9) Inform any accused charged with an offense punishable by incarceration who is unable to afford an attorney that he or she may be entitled to the services of a public defender.

**Connecticut Practice Book, Sec. 36-5. Execution and Return of Warrant**
The officer executing an arrest warrant may do so anywhere within the state upon apprehension of the accused. The officer shall take the accused into custody, **serve a copy of the warrant upon him or her** and follow the procedure specified in Sections 38-1 or 38-2, whichever is applicable.

# EXHIBIT 8

# INFORMATION

JD-CR-71 REV. 3-11

STATE OF CONNECTICUT
SUPERIOR COURT

| Police Case number | Agency name | Agency number | Disposition date |
|---|---|---|---|
| 1300000765 | Avon Police | 0004 | |

## Title, Allegation and Counts

| State of Connecticut vs. (Name of accused) | Residence (Town) of accused | Docket number |
|---|---|---|
| Reich, Jonathan | | CR13-116876 |

| Address | Date of birth | |
|---|---|---|
| | | The undersigned Prosecuting Authority of the Superior Court of the State of Connecticut charges that: |

| To be held at (Town) | Geographical area number | Court date |
|---|---|---|
| Community Court | COMM | 6/5/13 |

| Count | Offense | At (Town) | On or about (Date) | In violation of General Statute number | Continued to | Purpose | Reason |
|---|---|---|---|---|---|---|---|
| Count One — Did commit the offense of: | HARASSMENT 2ND | Avon | 01/31/2013 | 53a-183 | 7-10-13 | P | |
| Count Two — Did commit the offense of: | | | | | | | |
| Count Three — Did commit the offense of: | | | | | | | |

☐ See other sheet for additional counts

Date: 5/13/13

Signed (Prosecuting Authority): [signature]

## Court Action

| Defendant advised of rights before plea (Judge) (Date) | Bond | Surety | 10 % / Cash | Election (Date) |
|---|---|---|---|---|
| ☒ Attorney ☐ Public defender Guardian | $50,000 | PS | ☐ ☐ | ☐ CT ☐ JY |

Bond change:

Seized property inventory number:

| Count | Plea date | Plea | Plea withdrawn: Date | Plea withdrawn: New plea | Verdict finding | Fine | Remit | Additional disposition |
|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | $ | $ | |
| 2 | | | | | | $ | $ | |
| 3 | | | | | | $ | $ | |

| Date | Other Court Action | Judge |
|---|---|---|
| JUN 05 2013 | Cond of bond - no cont w/victim whatsoever | [signature] |

| Receipt number | Cost | Bond information |
|---|---|---|
| | ☐ BMP ☐ NCI | ☐ Bond forfeited ☐ Forfeiture vacated ☐ Forfeiture vacated and bond reinstated |

| Application fee - receipt number if paid | Circle one W I Q | Program fee - receipt number if paid | Circle one W I Q | Probation fee - receipt number if paid | Circle one W I Q |
|---|---|---|---|---|---|
| | | | | | |

| Prosecutor on original disposition | Reporter/monitor on original disposition | Signed (Clerk) | Signed (Judge) |
|---|---|---|---|
| | | | |

*This is page 1 of a 2 page information*

# EXHIBIT 9

**INFORMATION**
JD-CR-71 REV. 3-11

STATE OF CONNECTICUT
SUPERIOR COURT

Disposition date

| Police Case number | Agency name | Agency number |
|---|---|---|
| 1300000765 | Avon Police | 0004 |

## Title, Allegation and Counts

| State of Connecticut vs. (Name of accused) | Residence (Town) of accused | Docket number |
|---|---|---|
| Reich, Jonathan | | CR13-116876 |

Address

Date of birth

The undersigned Prosecuting
Authority of the Superior Court
of the State of Connecticut
charges that:

| To be held at (Town) | Geographical area number | Court date |
|---|---|---|
| Community Court | COMM | 6/5/13 |

Count One — Did commit the offense of:
HARASSMENT 2ND

| At (Town) | On or about (Date) | In violation of General Statute number |
|---|---|---|
| Avon | 01/31/2013 | 53a-183 |

Count Two — Did commit the offense of:

| At (Town) | On or about (Date) | In violation of General Statute number |
|---|---|---|
| | | |

Count Three — Did commit the offense of:

| At (Town) | On or about (Date) | In violation of General Statute number |
|---|---|---|
| | | |

Continued to / Purpose / Reason (handwritten):
7-10-13 P    6-10-14 P
9-18-13 P    7-22-14 PL
11-21-13 P   9-30-14 P
1-29-14 P    11-4-14 (800)
3-26-14 P    6-14-15 (801)
5-20-14 P    6-16-15 (801)
             6-14-16 (801)
             5-26-15 P motn
                      write

☐ See other sheet for additional counts    Date 5/13/13    Signed (Prosecuting Authority)

## Court Action

Defendant advised of rights before plea

(Judge)    (Date)    Guardian

| Bond | Surety | ☐ 10% | Election | (Date) |
|---|---|---|---|---|
| $150,000 | PS | ☐ ☐ Cash | ☐ CT  ☐ JV | |
| Bond change | | | Seized property inventory number | |

| Count | Plea date | Plea | Plea withdrawn Date | New plea | Verdict finding | Fine | Remit | Additional disposition |
|---|---|---|---|---|---|---|---|---|
| 1 | | | | | | $ | $ | |
| 2 | | | | | | $ | $ | |
| 3 | | | | | | $ | $ | |

Date    Other Court Action    Judge
JUN 05 2013 Cncl of bond no cout w/victims whatsoever signed

| Receipt number | Cost ☐ BMP ☐ NCI | Bond information ☐ Bond forfeited  ☐ Forfeiture vacated  ☐ Forfeiture vacated and bond reinstated |
|---|---|---|
| Application fee - receipt number if paid | Program fee - receipt number if paid    Circle one W I Q | Probation fee - receipt number if paid    Circle one W I Q |

Circle one W I Q

| Prosecutor on original disposition | Reporter/monitor on original disposition | Signed (Clerk) | Signed (Judge) |
|---|---|---|---|

*This is page 1 of a 2 page information*

# EXHIBIT 10

From: "James Viadero" <james.viadero@newtown-ct.gov>
To:
Sent: Wednesday, October 26, 2016 4:19:26 PM
Subject: Re: CT FREEDOM OF INFORMATION ACT REQUEST

Good job on the response       Here is the latest. He doesn't let up. Same request. Thanks. Also                    Riecht
last week. Nothing we can get a warrant for.

Jv

Jv

Sent from my iPhone

# EXHIBIT 11

**Transcript**

**Phone Call with Avon, Connecticut Police Department**

**Date: 6/21/2016**
**Time: 2:00pm**

**Dispatcher 1738:** Avon Police Department, dispatcher Donahue

**Caller:** Hi. You guys have an officer there who is falsifying police reports. I'd like to notify you of the criminal activity taking place.

**Dispatcher 1738:** Which officer?

**Caller:** That would be detective Jason Reid... and his supervisor, Jeff Gilbert.

**Dispatcher 1738:** Ok, well, I can put you through to my supervisor.

**Caller:** Can I speak with Chief Ronaldo please?

**Dispatcher 1738:** Hold on one moment, let me see if he's available, he actually might not-

**Caller:** Ok

**Dispatcher 1738:** -be here. He might have left for the day. Can I ask for your name?

**Caller:** Yeah, it's Jonathan Reich.

**Dispatcher 1738:** Ok, how do you spell your last name, Jonathan?

**Caller:** R- E- I- C- H.

**Dispatcher 1738:** R- E- I- C- H, ok, hold on one moment, let me just put you on hold.

**Dispatcher 1738:** Thanks.

*<Standby>*

**Dispatcher 1738:** Hi, Jonathan?

**Caller:** Yes.

**Dispatcher 1738:** Hi, thank you so much for holding. Unfortunately, the chief is actually on vacation at the moment. Our lieutenant will be back in the morning if you want to leave her a voicemail.

**Caller:** No, I don't, I don't trust her. Is that Ms. Walsh?

**Dispatcher 1738:** Yes

**Caller:** Yeah, I'm not gonna be dealing with her. I'll only deal with the chief on this.
Dispatcher 1738: Right, yeah-

**Caller:** There is too much misconduct happening.

**Dispatcher 1738:** -certainly in the occasion;

**Caller:** So, I'm waiting, let me ask you this. Is there any case against me? My name, Jonathan Reich... right now? In your department? So, I may be calling the wrong department, unfortunately, I just want to confirm that.

**Dispatcher 1738:** I mean, well, we do have all of those people here.

**Caller:** No, is there a case against Jonathan Reich, in your system? What's the status?

**Dispatcher 1738:** Ok, well hold on one second-

**Caller:** Thank you

**Dispatcher 1738:** -while I just try to look... Can I just place you on hold for one moment?

**Caller:** Sure

**Dispatcher 1738:** Thank you

*<Standby>*

**Dispatcher 1738:** Hi, sir?

**Caller:** Yes

**Dispatcher 1738:** Hi, thank you so much for holding, there are no open cases, with the Avon police in regards to your name.

**Caller:** Can you check my name once- one more time please? It's spelled R- E- I- C- H.

**Dispatcher 1738:** Yep, I just checked your name.

**Caller:** First name, Jonathan, J- O- N- A- T- H- A- N.

**Dispatcher 1738:** Yep, I just checked your name. That was-

**Caller:** There's no open case-

**Dispatcher 1738:** That was what I put in there.

2

**Caller:** -is that correct?

**Dispatcher 1738:** That's correct

**Caller:** And what's your dispatcher ID number, please?

**Dispatcher 1738:** My dispatcher ID is 1738

**Caller:** Ok That's all I needed. I appreciate your assistance. Have a good day.

**Dispatcher 1738:** Alright, absolutely

**Caller:** Thanks

**Dispatcher 1738:** You too

***<u>\<End\></u>***

.

# EXHIBIT 12

<div align="center">

**Transcript**

**Phone Call with New York City Police Department 107<sup>th</sup> Precinct**

**Date: 4/20/2016**
**Time: 12:43 PM**

</div>

**Answering Party #1:** 107<sup>th</sup> **<Redacted Name>** speaking

**Caller:** Yeah, hi, how's it going? I am calling about, a case and possible, one of your detectives that wrote up a report and I just need… that's what is being accused of your department by an external police agency, and I don't think

**Answering Party #1:** Wait, wait, wait, wait, wait. I'm trying to understand.

**Caller:** Yeah.

**Answering Party #1:** You said one of our detectives wrote a case up?

**Caller:** Yes. Then the

**Answering Party #1:** Do you know the detective?

**Caller:** Yeah. His name is                          . But, I'm not the one saying this, I'm just calling to confirm. There is another police department that is actually accusing the 107<sup>th</sup> of performing an investigation that I don't know happened or not. So, that's why I'm calling.

**Answering Party #1:** Wait, ok, but, what investigation?

**Caller:** apparently some sort of investigation

**Answering Party #1:** Against who? You?

**Caller:** Against me. I'm calling up to see what the status of the investigation is, if it ever took place.

**Answering Party #1:** Ok, how do you know that they're doing and conducting an investigation on you?

**Caller:** Well, I have some internal police reports that mention the 107<sup>th</sup>.

**Answering Party #1:** Ok, but where did you get the police reports from?

**Caller:**  I can't disclose that. That's-

**Answering Party #1:** Oh, ok, well                          is actually retired, over a year, year and a half ago, or more. So he's not even here anymore.

<div align="center">

**Page 1 of 10**

</div>

**Caller:** So he couldn't be actively working an active case right now?

**Answering Party #1:** Well, I don't even know whom I'm speaking to so

**Caller:** Sure, my name is Jonathan Reich.

**Answering Party #1:** Ok, but you have internal information, so I really don't know who I'm talking to either to disclose any information.

**Caller:** I'm a local resident of the 107th precinct's patrol area.

**Answering Party #1:** Ok, so, would you like me to transfer you downstairs to-

**Caller:** Yes.

**Answering Party #1:** -107th precinct?

**Caller:** Yes please.

**Answering Party #1:** Hold on, ok.

***<Standby waiting period>***

**Answering Party #2:** 107th, **<Redacted Name>** can I help you?

**Caller:** Hi, how's it going sir?

**Answering Party #2:** Good, how can I help you?

**Caller:** Sure. I'm calling about, I need some paperwork from the department. Apparently they did an extensive investigation, according to some people. The issue that I have at hand is I just found out that the detective who's involved in the active investigation is actually retired.

**Answering Party #2:** Yeah, he's been retired a while.

**Caller:** I know. And that's why I am, I'm very concerned because there's, there's a police department that's claiming that there's an active investigation that the 107th is in involved in. And I'm just calling to check if you have that person, under that person's name in your database.

**Answering Party #2:** I would search you up in squad.

**Caller:** They, they just sent me down to you.

**Answering Party #2:** Who's the person?

**Caller:** It was a female, I don't remember her name.

**Answering Party #2:** Yea, but no, who's the person that we're looking for?

**Caller:** Oh, it's                      Would have done the whole investigation and it, it's still an ongoing case.

**Answering Party #2:** Ah. If it's an ongoing case then squad would be looking into it. Not, not down here, on the patrol.

**Caller:** Well, it's not, I'm saying that's what they're claiming. I don't think that Kevin Hogan ever did investigate this, they're just using his name.

**Answering Party #2:** I wouldn't have, I wouldn't have any way to find out.

**Caller:** Can you just search the name in your database?

**Answering Party #2:** Really not supposed to search for names in my database.

**Caller:** This is about the 107th precinct, I'm just trying to get the bottom of this. I'm a local resident. To absolve the 107th of liability from this, because I, I know the captain, and just, we just want to

**Answering Party #2:** Sure thing but-

**Caller:** -resolve this. I've been at-

**Answering Party #2:** I'm not supposed to run people here, bud.

**Caller:** Ok, well, there was a lawyer's letter... sent to the precinct.

**Answering Party #2:** Yeah, I know, you're from Connecticut or something man

**Caller:** I'm not from Connecticut, I'm a local resident, sir. And, it, it has gone responded to.

**Answering Party #2:** I can't...

**Caller:** This is an investigation out of the 107th precinct that you need to follow up on

**Answering Party #2:** Okay, I said I'm not doing an investigation, ok, please? The, squad does investigation. I don't know why, and I can't help you.

**Caller:** -transfer me back to them then, please, sir?

**Answering Party #2:** Yup. I guess.

**Caller:** Thank you.

**Answering Party #2:** Yup.

*<Standby waiting period>*

**Answering Party #3:** I got it **<Name>** I got it.

**Caller:** Hi

**Answering Party #3:** This is squad.

**Caller:** I was just transferred by the precinct, the main desk.

**Answering Party #3:** To... the detective squad?

**Caller:** That's right. It's about a current investigation you guys have been, actively involved in. But, then I found out that the, detective is retired... from the force. So, it's raising my suspicions on this investigation. So, now I'm calling for all documents and paperwork, that are, that it's ongoing. And I want to know what the status is of the investigation.

**Answering Party #3:** You want to know the status of the investigation?

**Caller:** I want to even know if it's taking place. I'm calling to confirm

**Answering Party #3:** Status. Alright, listen, hold on man.

**Caller:** Sure.

**Answering Party #3:** Relax... I'm not the investigator. Don't lock me up. I can only

**Caller:** Oh, I'm not, sir.

**Answering Party #3:** I can only give you what I can give you.

**Caller:** Thank you.

**Answering Party #3:** First of all, paperwork and stuff like that, you're not entitled to that. Number two, I can tell you, of the status- do you have a case number? Do you know it?

**Caller:** No, I don't know it. I can give you the first name and last name.

**Answering Party #3:** Alright, hold on, let me...

**Caller:** Thank you.

**Answering Party #3:** What was the name of your investigator?

**Caller:** Allegedly the investigator's last name was .

**Answering Party #3:** Yeah, , he's retired.

**Caller:** Yes, it's an active case supposedly, as well, and

**Answering Party #3:** How do you know it's an active case? Now, are you the victim... or what are you?

**Caller:** I'm, supposedly the case is against me. I'm the defendant

**Answering Party #3:** Case is against you?

**Caller:** in the case. Yeah.

**Answering Party #3:** So I can't give you any information in regards to the case.

**Caller:** There is no case sir. That's what I'm saying.

**Answering Party #3:** Ah, if you're the person the case is against, what makes you think there's no case?

**Caller:** Sir, sir, there's people accusing your department of some misconduct; and I'm trying to confirm whether or not your department was involved. Because, this was taken straight up to the commissioner recently-

**Answering Party #3:** Okay

**Caller:** -and I just, I just need this information. I mean, I can-

**Answering Party #3:** Well I can't give you that information. If you're in here-

**Caller:** This is an active investigation. I'm urging the 107th to- to conduct their investigation. It's been three-and-a-half years.

**Answering Party #3:** If there is an active investigation, then we are doing that. If it had been investigated-

**Caller:** You're not, sir.

**Answering Party #3:** The the investigation was deemed to be closed, then it's closed and then no further investigation.

**Caller:** Sir, either there is an active investigation or there isn't.

**Answering Party #3:** Like I said, if-

**Caller:** This has gone through the court system-

**Answering Party #3:** -if there is one, it's going, it's an ongoing investigation.

**Caller:** Why hasn't-

**Answering Party #3:** If it- if it, has been deemed to be closed then we have closed it. I don't know

what else I could share about it.

**Caller:** Is there an, I'm going to give you the name-

**Answering Party #3:** Sir?

**Caller:** -and I need you to tell me if there's an investigation or not.

**Answering Party #3:** Alright, give me your name.

**Caller:** It's Jonathan, J- O- N- A- T- H- A- N. Reich-

**Answering Party #3:** J- O-

**Caller:** N- A-

**Answering Party #3:** N- A-

**Caller:** T- H-

**Answering Party #3:** T- H-

**Caller:** A- N-

**Answering Party #3:** A- N- Jonathan?

**Caller:** Yes. The last name is Reich. R- E- I- C- H-

**Answering Party #3:** R- E-

**Caller:** I-

**Answering Party #3:** I-

**Caller:** C- H-

**Answering Party #3:** C- H. Date of birth?

**Caller:**

**Answering Party #3:** -                        and what are you alleged to have done?

**Caller:** There's so many things, I've only seen it in the news articles, I haven't been provided with any documentation by the people making the allegations and that's why it's very strange, that this whole thing is happening.

**Answering Party #3:** Who do you think put an investigation against you?

**Caller:** I don't know. They're, not willing to disclose who launched the investigation, which is another problem

**Answering Party #3:** Who is... who is they?

**Caller:** The Avon police department. They're claiming to have done a joint investigation

**Answering Party #3:** Where the hell is Avon?

**Caller:** -with your department?

**Answering Party #3:** Where's Avon?

**Caller:** Connecticut.

**Answering Party #3:** So wait, you're, you're calling the NYPD in regards to a case that originated in Connecticut?

**Caller:** No it originated in your precinct, on                  's desk, in the detective bureau. We're trying to find out if that took place, or if it didn't; if an external police department is trying to hold the 107th liable for the misconduct. That's what we're trying to find out now. I'm here, I'm local in, in the 107th

**Answering Party #3:** Uh huh...

**Caller:** This case has been ongoing for three-and-a-half-years

**Answering Party #3:** What's you address, Jon?

**Caller:** It's

**Answering Party #3:** I don't see that...

**Caller:**

**Answering Party #3:** Wait, where did you used to live before that? Anywhere?

**Caller:** No, it's been that address, I've been living for, for over ten years.

**Answering Party #3:** Give me a second.

**Caller:** Sure, thank you sir for your help.

**Answering Party #3:** What's your date of birth again?

**Caller:**

**Answering Party #3:** Were you ever arrested before?

**Caller:** No. They're claiming that this was an arrest and that it hasn't been adjudicated yet. However-

**Answering Party #3:** What was the arrest for?

**Caller:** They're claiming that it's harassment, is the claim. I haven't seen any paperwork. They won't identify who the people were, who the people are or were. Or, they're making the

**Answering Party #3:** Searching, I don't see, I don't see anything in here with your name, date of birth. I mean, absolutely nothing.

**Caller:** And would that be for the three years back? Or would that just tell you the

**Answering Party #3:** This goes back even further than that.

**Caller:** Okay

**Answering Party #3:** If it's you, I, I have your, unless I spelled something wrong, y-, your last name is R- E- I- C- H, right?

**Caller:** Yes, Reich. R- E- I- C- H-

**Answering Party #3:** -Date of birth, date of birth,                                    ?

**Caller:** Yes. Yes, sir.

**Answering Party #3:** Twenty-five, what's your social?

**Caller:** I don't feel comfortable giving that over the phone.

**Answering Party #3:** Let's put it this way, last four digits;                          ?

**Caller:** Yes, sir.

**Answering Party #3:** Alright, so I have, I just looked you up here. You used to live in
                -

**Caller:** That's correct.

**Answering Party #3:** -at some point.

**Caller:** That's correct.

**Answering Party #3:** Yeah, there's nothing here for you. Nobody has an investigation against you. Nobody's looking for you. You are not a victim of anything. You are, unfortunately, hate to say it, not on our list for anything.

**Caller:** Understood, sir. Now, I've-

**Answering Party #3:** Alright?

**Caller:** -just one other question for you. Is there any way I can-

**Answering Party #3:** Isn't that a good thing?

**Caller:** -get this in writing? It's a very good thing, sir.

**Answering Party #3:** It's an excellent thing. Unfortunately, I cannot give you that in writing.

**Caller:** What's your badge number; just so I know for my records?

**Answering Party #3:**

**Caller:**                                    . And what's your name, once more, sir?

**Answering Party #3:**

**Caller:**                       Okay

**Answering Party #3:** Not a problem.

**Caller:** Sir, I really appreciate your help. I would really appreciate it in writing. Is there anyone I could contact, maybe community affairs-

**Answering Party #3:** You can, you can try community affairs. I wouldn't be able to help you with that.

**Caller:** Do you know                       ?

**Answering Party #3:** No I don't. Or you could also try, one Police Plaza. They can give you. One Police Plaza would best be able to handle any kind of you know, records, or anything like that. We don't give out that stuff. We're not about it.

**Caller:** Okay, so this is really good news. So, you're saying, according to your computer system, I could come in to the 107th precinct and report-

**Answering Party #3:** You're, I got news for you, bud-

**Caller:** a crime that's taking place

**Answering Party #3:** You're a free man. Ah-

**Caller:** Thank you sir.

**Answering Party #3:** -you know, that's a great thing, isn't it?

**Caller:** It is, but.

**Answering Party #3:** Hear that?

**Caller:** I appreciate it.

**Answering Party #3:** There's no but, there's no but to that...

**Caller:** Ok, sir.

**Answering Party #3:** And, you know.

**Caller:** Thank you so much, I appreciate it.

**Answering Party #3:** Alright, good luck, best of luck to you, sir.

**Caller:** Take care, bye.

**Answering Party #3:** Yeah, bye bye.

***<u>&lt;end of call&gt;</u>***

# EXHIBIT 13



# EXHIBIT 14



# EXHIBIT 15



**STATE OF CONNECTICUT**
**Department of Emergency Services & Public Protection**
**Connecticut State Police**
**Bureau of Special Investigations**
**Extradition Unit**



The Honorable Andrew M. Cuomo
Governor of the State of New York
State Capitol
Albany, New York 12224
January 20, 2017

NYS DEPT. OF CORRECTIONS
& COMMUNITY SUPERVISION

JAN 23 2017

Attn: Kristin Ross, Extradition Specialist
Re  : The Extradition of Jonathan Reich (DOB:

RECEIVED
GOVERNOR'S EXTRADITION OFFICE

Dear Governor Cuomo:

I am enclosing my rendition request seeking the return of the above subject to the State of Connecticut.  I have enclosed the requisite credentials of the agent(s) authorized to return the subject to this jurisdiction.

The subject was arrested as a Fugitive from Justice by the New York City Police Department on November 21, 2016.  Later on, Reich appeared in the New York County Criminal Court located 125-01 Queens Boulevard Kew Gardens, NY 11415 and refused to waive extradition.  He is currently being housed at the Vernon C. Bain Center located at 1 Hallack Street, Bronx, New York 10474.  The primary contact for this extradition is Assistant District Attorney George Farrugia at the New York County District Attorney's Office also located at located 125-01 Queens Boulevard Kew Gardens, NY 11415, Phone: (718) 286-6451.  The 90th day is 02/18/17.

When the subject becomes available for extradition please contact Jerry Kumnick, Hartford State's Attorney's Office, 101 Lafayette Street, Hartford 06106, telephone number (860) 566-3190 ext. 3139.  Thank you for your time and assistance in this extradition matter.

Detective David Hickey #1070
Connecticut State Police
Extradition Unit

# EXHIBIT 16

Hartford Superior Court – Connecticut v. Jonathan Reich
Docket # H14H-CR13-0116876-T


Discovery Motion Filed On **October 8, 2015** at Hartford Superior
Court, Received and stamped by the Court Clerk's Office on the last
page of the document.


Unanswered To Today's Date **October 14, 2016** 5:01PM
(Over 365 days later and counting that the State of Connecticut has
been in violation of the Discovery Request)

DOCKET NO. H14C-CR13-0116876-S                    SUPERIOR COURT

STATE OF CONNECTICUT                              GA 14 - HARTFORD
                                                  COMMUNITY COURT
VS.
                                                  AT HARTFORD
JONATHAN REICH
                                                  OCTOBER 7, 2015

### REQUEST FOR DISCOVERY

Pursuant to Connecticut Practice Book § 40-11, the undersigned attorney representing the Defendant, JONATHAN REICH ("Defendant"), in the above-referenced matter, hereby requests that the prosecuting authority forward the following items to the Defendant's attorney, either by mail or by pick up at the prosecutor's office by the undersigned attorney.

1. Copies and physical inspection of the State of Connecticut Superior Court Docket Information pages from the State's Attorney's file and from the Court Clerk's file regarding Docket No. H14C-CR13-0116876-S and Avon Police Department Case No. 1300000765

2. Copies of the Connecticut State Police (State of Connecticut Department of Emergency Services and Public Protection) report "Case CFS 13-00000766" and the corresponding written complaint associated with Docket No. H14C-CR13-0116876-S and Avon Police Department Case No. 1300000765

3. Copies of digital recordings of all 911 phone calls placed to the Avon Police Department by Dr. H. Wayne Carver dated 1/3/13 and 1/4/13 associated with Avon Police Case #1300000765 and Docket No. H14C-CR13-0116876-S

copies of digital recordings and outgoing call logs of phone calls placed by Sergeant Jeffrey Gilbert, Detective Jason Reid, or any other officer or appointee assigned or tasked to Avon Police Case #1300000765, to the defendant or his family members between 1/30/13 until 5/20/13. (This includes landlines, personnel-owned phones, and Police Department issued mobile phones).

5: A detailed call log, including date, time, and duration of the "daily phone calls" allegedly placed by the defendant to the "family from Durham, CT".

6: Copies of digital recordings of 911 phone calls placed to any police agency in the state of Connecticut by "a family from Durham, CT" mentioned in section 8 of the Arrest Warrant Affidavit for Avon Police Case #1300000765.

7: Copies of the emails containing the information requested via ex-parte by Detective Jason Reid from TelTech Systems via e-mail on 2/6/13.

8: Copies of all ex-parte orders issued to TelTech Systems on 2/6/13, including it's transmission method and log sheet.

9: Copies of the Arrest Warrant Affidavit associated with Docket No. H14C-CR13-0116876-S and Avon Police Case #1300000765, including the Incident Report, Narrative, & CAD (Computer Aided Dispatch) Report.

10: Copies of digital recordings of all 911 phone calls placed to Avon Police Department or to any police agency in the state of Connecticut by Lt. Paul Vance on 1/31/13.

11: Copies of digital recordings of 911 phone calls placed to any police agency in the state of Connecticut by "Doctor Carver's secretary" on 2/6/13.

12. Disk that was placed into evidence containing all recorded phone calls (Police Report - Item #7)

13. Subpoena documents that allowed Avon Police Department to access personal records from Metro-PCS (Police Report - Item #11)

14. Any and all communications & directives from the Avon Police Department/State of Connecticut to and from NYPD Detective Kevin Hogan and any and all New York Police agencies.

15. Recordings and records of all Avon Police Department Communications (letters, emails, & phone calls) with Spoofcard.com, MetroPCS, and TelTech Systems

16. Subpoena and ex-parte documents and orders served to Spoofcard.com, MetroPCS, and TelTech Systems

17. All "Press Releases" issued by the Avon Police Department or Hartford Community Court including any communications with the Avon Patch Media Outlet (Jessie Sawyer)

18. The name, rank, and position of the intake officer or employee of the Connecticut State Police (State of Connecticut Department of Emergency Services and Public Protection) for the complaint from the "family from Durham, CT"

19. Documentation from Judge McNamara giving written consent to the Avon Police Department (Detective Jason Reid or Detective Sergeant Jeffrey Gilbert) to issue a threat of a higher bail than what the original warrant was signed for. (Consent to increase the bail from $50,000 to $250,000)

20. Agreement document that states no legal defense fundraising and no social media or websites talking about the case

21. Full identification of the complainants/"victims" referred to as the "family from Durham, CT" in the Arrest Warrant Application

22. In-camera review and complete un-redacted copies of all documents and disk media associated with Connecticut State Police (State of Connecticut Department of Emergency Services and Public Protection) Report CFS No. 1200704559 including Report No. 1200704559-00054069 by Investigator TFC Michael A. Downs (Badge No. 0502) who examined elements of Avon Police Department Case #1300000765 and found that "there does not appear to be a violation of any sort".

23. Copies of all notes from the Bail Commissioner's mandatory pre-arraignment interview

24. Copies of all notes from the Court's human services offices mandatory "needs assessment" after arraignment

25. Copies of all emails, letters, and communications sent to Assistant State's Attorney Thomas J. O'Brien from members of the public and State of Connecticut employees regarding the defendant, Docket No. H14C-CR13-0116876-S, and Avon Police Department Case #1300000765

26. Copies of all emails, letters, and communications sent by Assistant State's Attorney Thomas J. O'Brien to members of the public and State of Connecticut employees regarding the defendant, Docket No. H14C-CR13-0116876-S, and Avon Police

Department Case #1300000765

27: A detailed call log, including phone numbers, date, time, and duration of all phone calls placed into evidence by Detective Jason Reid of the Avon Police Department.

28. Pursuant to Connecticut Practice Book § 41-13 the Defendant requests the names and addresses of all witnesses that the prosecuting authority intends to call in its case-in-chief. The Defendant certifies that no contact will be made with these witnesses except possibly by his attorney and only with prior permission of the prosecuting attorney.

The Defendant,
Jonathan Reich

418789
By Attorney Christopher D. Grotz, Esq.
Juris No. 418789

CERTIFICATION

Sent via Telefax to Hartford Community Court, 80 Washington Street, Hartford, CT 06106 via fax at 860-756-7025 this 7th day of October, 2015.

By: Christopher D. Grotz, Esq.
Juris No. 418789
512 Rt. 148
Killingworth, CT 06419
Phone: 860-402-0184
Fax: 800-893-0679

# EXHIBIT 17



<div align="center">

**FORUM**
ARBITRATION·MEDIATION·INTERNATIONAL

</div>

|  |  |  |
|---|---|---|
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| **(Complainant)** | ) | |
| | ) | |
| v. | ) | **Domain Names In Dispute:** |
| | ) | |
| Jonathan Reich | ) | |
| | ) | |
| | ) | |
| | ) | |
| **(Respondent)** | ) | |
| ———————————— | ) | |

<div align="center">

**REVISED COMPLAINT IN ACCORDANCE WITH**
**THE UNIFORM DOMAIN NAME DISPUTE RESOLUTION POLICY**

</div>

[1.]    This Complaint is hereby submitted for decision in accordance with the Uniform Domain Name Dispute Resolution Policy (UDRP), adopted by the Internet Corporation for Assigned Names and Numbers (ICANN) on August 26, 1999 and approved by ICANN on October 24, 1999, and the Rules for Uniform Domain Name Dispute Resolution Policy (UDRP Rules), with an effective date of July 31, 2015, and the FORUM's Supplemental Rules (Supp. Rules). UDRP Rule 3(b)(i).

[2.]    **COMPLAINANT INFORMATION**

      [a.]    Name:
      [b.]    Address:
      [c.]    Telephone:
      [d.]    Fax:
      [e.]    E-Mail:

UDRP Model Complaint

under these Rules and under applicable law, as it now exists or as it may be extended by a good-faith and reasonable argument.

Respectfully Submitted,

November 22, 2016
Date