# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

———————————

№ 19-CV-6491 (EK) (RER)

———————————

JONATHAN REICH,

Plaintiff,

VERSUS

CITY OF NEW YORK, AND DETECTIVE JOHN FOGELMAN IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AS A POLICE OFFICER EMPLOYED BY THE CITY OF NEW YORK, JOHN DOES #1-8, GEORGE DELUCA-FARRUGIA IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AS AN ASSISTANT DISTRICT ATTORNEY EMPLOYED BY THE CITY OF NEW YORK, AND ANDREW M. CUOMO IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AS GOVERNOR OF THE STATE OF NEW YORK,

Defendants.

———————————

**REPORT & RECOMMENDATION**

July 23, 2021

———————————

**TO THE HONORABLE ERIC R. KOMITEE**
**UNITED STATES DISTRICT JUDGE**

**RAMON E. REYES, JR., U.S.M.J.:**

On October 5, 2020, Plaintiff Jonathan Reich ("Plaintiff"), *pro se*, filed an Amended Complaint pursuant to 42 U.S.C. §§ 1983 and 1988 alleging that Defendants conspired with unnamed officials in Connecticut to violate his civil rights. On November 16, 2020, Defendants, the City of New York ("the City"), Assistant District Attorney George DeLuca-Farrugia ("DeLuca-Farrugia"), and Detective John Fogelman ("Fogelman") (collectively, "the City Defendants") filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth herein, I

1

respectfully recommend that the City Defendants' motion be granted, and the claims against them be dismissed with prejudice.

## BACKGROUND

Plaintiff brings this action against Defendants alleging various constitutional and statutory violations arising from his extradition from New York to Connecticut for two underlying crimes: (1) harassing the Chief Medical Examiner who performed the autopsies on the victims of the Sandy Hook Elementary School Shooting; and (2) failing to appear for a scheduled court appearance in Connecticut related to the harassment charge. (Dkt. 22-1 ("City Mem.") at 1; Dkt. No. 19 ("Am. Compl.") ¶¶ 23; 37). Plaintiff alleges that Defendants engaged in a conspiracy with unnamed officials in Connecticut to, among other things: "frame[]" him for the harassment charge (Am. Compl. ¶ 23); "frame" him as a "dangerous fugitive," (*id*. ¶ 24); forge documents (*id*. ¶¶ 48; 92); harass him and his family (*id*. ¶ 37); and illegally extradite him to Connecticut without reason (*id.* ¶¶ 23; 61).

### I. Plaintiff's Arrest in Connecticut

Plaintiff is a resident of Flushing, New York. (Am. Compl. ¶ 15). In 2013, he was arrested in Avon, Connecticut for allegedly harassing the Chief Medical Examiner who performed the autopsies on the victims of the Sandy Hook Elementary School shooting. (City Mem. at 1; Am. Comp. ¶ ¶ 21; 23).[1] Plaintiff was charged with harassment in the second degree, a misdemeanor. (*Id*. ¶¶ 23, 37). Plaintiff claims that his arrest was in error and that officials conspired to frame him for the harassment charge. (See *id.* ¶ 28).

---

[1] Plaintiff claims that his identity was stolen and misused in early 2013 and that he was not the individual that harassed the Chief Medical Examiner. (Am. Compl. ¶¶ 27–28).

Sometime after his arrest in Connecticut, Plaintiff returned to New York. (*See id*. ¶¶ 28; 57). He was required to return to Connecticut for a court appearance related to the harassment charge. On November 25, 2015, an arrest warrant was issued for Plaintiff after he allegedly failed to appear at the scheduled court appearance. (Dkt. No. 22-3 ("Arrest Warrant")).

## II.       Plaintiff's Arrest in New York

On November 21, 2016, Plaintiff was arrested at his residence in Queens County, New York pursuant to the Connecticut arrest warrant. (*Id.* ¶¶ 57, 60–61). Defendant Fogelman was one of the arresting officers. (*Id*. ¶ 10). Plaintiff was not arrested for any crime in New York other than being a fugitive from Connecticut. During the arrest, Plaintiff claims that the arresting officers failed to read him his *Miranda* rights. (*Id*. ¶ 58).

## III.      Plaintiff's Incarceration and Extradition

Plaintiff appeared in the Queens County Criminal Court, refused to waive extradition proceedings, and was held without bail at Riker's Island. (*Id*. ¶¶ 60–61; ¶ 109). While at Riker's Island, Plaintiff claims he was subjected to various "inhumane and physically damaging conditions" including being: exposed to harmful mold conditions and poor air quality; denied access to safe drinking water, food, and reasonable medical care; forced to wear an identification tag that identified him as Jewish; and denied kosher foods. (*Id.* ¶¶ 95–97; 110). During this time, Plaintiff also claims that Defendant DeLuca-Farrugia, an Assistant District Attorney in Queens County, intentionally withheld evidence that was favorable to Plaintiff's defense in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). (*See id.* ¶¶ 74; 100).

On February 15, 2016, Queens County prosecutors obtained a Governor's Warrant authorizing Plaintiff's extradition to Connecticut. (*See* Dkt No. 22-6 ("Governor's Warrant")). Plaintiff was extradited on February 23, 2016. (Am. Compl. ¶ 65)

## IV.    Plaintiff Alleges He Was Framed Pursuant to a Conspiracy Between Defendants and Unnamed Connecticut Officials

Plaintiff claims that from 2013 through his extradition, Defendants conspired with unnamed Connecticut officials to frame[2] him for the harassment charge, frame him as a fugitive, and harass him.[3] (*See id*. ¶ 23, 24, 27–28). Specifically, Plaintiff claims that "Defendants assisted" Connecticut officials in framing him for the harassment charge and "falsely accuse[d] [him] of not appearing at a court date when they purposely postposed the court date, knowing this could potentially be used against [him] in the future." (*Id*. ¶¶ 23; 34).

According to Plaintiff, Defendants and Connecticut officials decided to "exploit" him only after his attorney became incapacitated in October 2016. (Am. Compl. at 15). To support this theory, Plaintiff claims that there was no warrant for his arrest prior to his attorney's incapacitation.[4] (*See id*. ¶¶ 49–51). Prior to this time, Plaintiff claims that he was informed by officials in New York and Connecticut that there was no warrant for his arrest and that he was not a fugitive. (*See id*. ¶¶ 49–51).[5] He also claims that he received an email from the Police Chief of

---

[2] Specifically, Plaintiff alleges that prosecutors in Connecticut "improperly restricted [him] from viewing any documents or evidence in the case or operating a legal defense fund." (*Id*. ¶ 30). In addition to withholding alleged *Brady* evidence, Plaintiff claims that prosecutors "falsified" documents (*id*. at 38); "tamper[ed]" with the docket sheet (*id*. ¶ 48); and refused to comply with the discovery requests of his attorney (*id*. at 42–46). Instead, the prosecutors "illegally disseminated" the documents to journalists, whose publications on Plaintiff's case caused him harm. (*Id*. at 36). Plaintiff also claims that the documents that were provided to his attorney and the media were "falsified." (*Id*. 38).

[3] Plaintiff claims that beginning in 2013, he began to experience harassment and "threatening communications" by Defendants and officials in Connecticut. (*Id*. ¶ 25, 27–28). At one point, he claims "hazardous material" was mailed to his family members. (*Id*. at 27). It is unclear who allegedly sent this material. Plaintiff claims that in 2016 "unidentified associates" of Defendants contacted him and his family "for the purposes of threatening harassment, extortion and stalking." (*Id*. ¶ 54).

[4] Plaintiff alleges various ethical violations by his prior defense attorneys. Federal Court is not the proper forum to report grievances against attorneys that are not representing a party in the current action. *See Adams v. Vill. of Keesville*, No. 07-CV-452 (LEK) (RFT), 2008 U.S. Dist. LEXIS 61764, at *21 (E.D.N.Y. Aug. 8, 2008) (citing *Bd. of Ed. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979).

[5] Although he does not explain why he suspected there may be a warrant for his arrest, and presumably had not yet been informed of any warrant, sometime after November 2015 (when the Connecticut warrant was issued), Plaintiff

Newtown, Connecticut stating: "also [words redacted by Plaintiff] Reich last week. Nothing we can get a warrant for." (*Id.* ¶ 56). Plaintiff claims this email "demonstrates that [he] was being targeted with additional false charges"[6] and that Defendants "maliciously concealed these details from him and from the court in Queens County." (*Id.*)

He also claims that at the time of his arrest, the arresting officers "clearly understood" that he was not a fugitive (*Id*. ¶ 57).

After his arrest in New York, Plaintiff claims Defendants "organized an illegal extradition based on false documents and false sworn statements made by Connecticut officials." (*Id*. at ¶ 23).

## PROCEDURAL HISTORY

On November 17, 2019, Plaintiff filed the original Complaint through his attorney. (Dkt. No. 1). After receiving two warnings from the Clerk's office, he filed the accompanying Civil Cover Sheet on December 20, 2019. (Entry dated 12/20/2019). On July 7, 2020, Plaintiff's counsel withdrew as his attorney, and thereafter Plaintiff proceeded *pro se*. (Minute Entry dated 7/7/2020). On October 5, 2020, Plaintiff filed the one-hundred and eleven paragraph Amended Complaint.[7]

---

contacted the NYPD and the Avon, Connecticut Police Department to inquire whether there was a warrant for his arrest. (*See* Am. Compl. ¶¶ 49–51).

[6] The arrest warrant that served as the basis for Plaintiff's arrest in New York was issued nearly a year earlier in connection to an arrest made by the Avon, Connecticut Police Department.

[7] *Pro se* plaintiffs cannot recover attorney's fees under 42 U.S.C. § 1988. *Kay v. Ehrler*, 499 U.S. 432, 435 (1991). To the extent Plaintiff intended to bring this claim pursuant to 42 U.S.C. § 1985, this claim would fail. To adequately allege a claim under Section 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of person of equal protection of the laws, or of equal privileges and immunities under the laws; [and] (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States." *Vinluan v. Ardsley Union Free Sch. Dist.*, 2021 U.S. Dist. LEXIS 52250, at *35 (S.D.N.Y. Mar. 18, 2021) (quoting *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993). A Section 1985(3) claim also requires "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). Here, Plaintiff does not claim that he was targeted on the basis of his race or otherwise class-based discriminatory animus. Plaintiff only mentions that he is Jewish in the context of his unconstitutional conditions of confinement claim (Am. Compl. ¶¶ 95–97) and does not allege that the conspiracy was formed to target him because he is Jewish. Indeed, Plaintiff offers no suggestion as to why he was allegedly framed. Accordingly, Plaintiff has failed to state an actionable claim under Section 1985(3).

(Dkt. No. 19). On November 16, 2020, the City Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (City Mem. at 2). On December 16, 2020, Plaintiff filed a Response in Opposition to the Motion to Dismiss. (Dkt. No. 30 ("Pl.'s Opp'n Mem.")). On December 28, 2020, Your Honor referred the motion to me for a report and recommendation.

## DISCUSSION

### I.      Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) should only be granted where, accepting all well-pleaded facts contained in the complaint as true and making all reasonable inferences in favor of the non-moving party, the plaintiff fails to "state a claim for relief that is plausible on its face." *Smith v. Doe*, No. 15-CV-0245 (RER) (SLT) 2016 U.S. Dist. LEXIS 151433, at *3 (E.D.N.Y. Oct. 31, 2016) (quoting *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007)), *adopted by* 2016 U.S. Dist. LEXIS 166503 (Dec. 1, 2016). Plausibility does not require probability, only that the facts "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555-56; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("the plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."). The court is not required to accept "legal conclusions" and should not credit "threadbare recitals of the elements of a cause of action[.]" *Iqbal*, 556 U.S. at 678.

Pleadings filed by a *pro se* Plaintiff must be liberally construed, particularly where, as here, "they allege civil rights violations." *Finnan v. Ryan*, 357 F. App'x 331, 333 (2d Cir. 2009) (quoting *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)); *see also Ceara v. Deacon*, 916 F. 208, 213 (2d Cir. 2019) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)) ("[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted

by lawyers.") However, "[d]espite this leniency afforded to *pro se* complaints, a *pro se* plaintiff must still plead enough facts to state a claim that is plausible on its face, and dismissal is therefore warranted where a *pro se* plaintiff has clearly failed to meet the minimum pleading requirements." *Carrion v. Singh*, No. 12-CV-360 (JFB) (WDW), 2013 U.S. Dist. LEXIS 34181, at *10 (E.D.N.Y. Feb. 21, 2013) (citing *Stone v. Dep't of Investigation*, 91 Civ. 2471 (MBM), 1992 U.S. Dist. LEXIS 1120, at *5–8 (S.D.N.Y. Feb 5, 1992) (explaining that "[a]lthough a *pro se* complaint will be liberally construed, in pleading an action under 42 U.S.C. § 1983 a *pro se* plaintiff has the burden of alleging deprivation of a federally protected right" and dismissing the complaint because plaintiff failed to adequately do so.).

Construing the *pro se* Amended Complaint liberally, I find that Plaintiff has alleged claims pursuant to 42 U.S.C. § 1983 ("Section 1983") for: (1) conspiracy; (2) false arrest and false imprisonment; (3) unlawful search and seizure; (4) denial of the right to a fair trial; (5) prosecutorial misconduct; (6) malicious prosecution; and (7) unlawful conditions of confinement. Plaintiff also brings a claim against the City pursuant to *Monell v. Department of Social Services,* 436 U.S. 658 (1978),  on the grounds that the City had policies and practices that were the "moving force, proximate cause, behind the conduct" that led to Plaintiff's alleged injuries. (*See* Am. Compl. ¶¶ 14, 76, 87, 103, 106). Plaintiff also alleges that Defendants violated New York Criminal Procedure Law §570 *et seq*. by holding him custody for more than 90 days without bail. (*Id*. ¶ 3).

## II.    Purported Conspiracy

As discussed above, Plaintiff's theory of the case is that Defendants conspired with officials in Connecticut to frame him for harassment and being fugitive. (*Id*. ¶¶ 23; 47; 71). A conspiracy claim against government officials may be alleged pursuant to Section 1983.

7

To state a claim of conspiracy under Section 1983 a "plaintiff must plead facts to 'suggest that an agreement was made'" between the conspiring parties to deprive him of a constitutional right. *Relevant Sports, LLC v. United States Soccer Federation, Inc*., 2020 U.S. Dist. LEXIS 128260, at *18 (E.D.N.Y. July 20, 2020) (quoting *Anderson News v. Am. Media, Inc*., 680 F.3d 162, 184 (2d Cir. 2012)); *see also Coakley v. Jaffe*, 49 F. Supp. 2d 615, 625 (S.D.N.Y. 1999) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)) ("a complaint must contain specific allegations of fact indicating a deprivation of rights, not a mere litany of general conclusions that shock but have no meaning.")

At minimum, to support a conspiracy claim, a "plaintiff must provide some factual basis supporting 'a meeting of the minds, such as that defendants entered into an agreement, express or tacit, to achieve [an] unlawful end,'" as well as provide "some 'details of time and place [the agreement was made] and the alleged effects of the conspiracy.'" *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000) (quoting *Warren v. Fischl*, 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999)); *see also*, *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 325 (2d Cir. 2010). "A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." *See Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997) (quoting *Leon v. Murphy*, 988 F.2d 303, 311 (2d Cir. 1993)); *see also Dwares v. City of N.Y*., 985 F.2d 94, 99 (2d Cir. 1993) ("the complaint must contain more than mere conclusory allegations.")

Plaintiff here makes only vague and conclusory allegations that "Defendants and their partners in Connecticut" worked together to frame him for his underlying harassment charge (Am. Compl. ¶¶ 23; 47) and to "utilize[d] the extradition process" to cause him "cruel and unusual punishment . . . outside the confines of normal procedure." (*Id.* ¶ 33). He provides no information of an

8

underlying agreement between Defendants and Connecticut officials; no details alleging the time and place this agreement was made; and has not alleged the goal that the parties illegally sought to achieve. Accordingly, Plaintiff has not plead any facts to support a conspiracy claim under Section 1983. Therefore, I respectfully recommend that the conspiracy claim against Defendants be dismissed.

### III. Section 1983 Claims[8]

### A. False Arrest and False Imprisonment

Plaintiff claims that he was a victim of false arrest and false imprisonment. (*Id.* ¶¶ 2; 77) "False arrest and false imprisonment are synonymous causes of action because the elements of the claims are identical." *Levantino v. N.Y. State Police*, 56 F. Supp. 3d 191, 200 (E.D.N.Y. 2014). "An essential element of [both] claims is that defendants were not entitled to confine plaintiff." *Jones v. Trump*, 971 F. Supp. 783, 788 (S.D.N.Y. 1997). "An arrest made pursuant to a facially valid arrest warrant is presumed to be made with probable cause." *Ruknuddin Masihuddin v. Gavin*, 2013 U.S. Dist. LEXIS 186145, at *30 (S.D.N.Y. Sept. 16, 2013). Therefore, "[w]hen an arrest is made pursuant to a warrant, a plaintiff cannot make the essential showing that defendant confined him without justification; thus, there can be no claim for false arrest under § 1983." *Smith v. City of New York*, No. 13-CV-2395 (SJ) (RER), 2014 U.S. Dist. LEXIS 139267, at *9 (E.D.N.Y. Sept. 30, 2014).

---

[8] In their Reply, the City Defendants withdrew their argument that the statute of limitations period for the Section 1983 claims had expired. (Dkt. No. 32 ("The City's Reply Br.") at 1. The Court notes that Plaintiff's Complaint was filed on November 17, 2019 (Dkt. No. 1), which is within the three-year statute of limitations period for Section 1983 claims in New York. *Milan v. Wertheimer*, 808 F. 3d 961, 963 (2d Cir. 2015).

Here, Plaintiff was arrested pursuant to an arrest warrant. [9] (*See* Am. Compl. ¶ 61; Arrest Warrant). Plaintiff claims that the arrest warrant was not valid because it was obtained on the basis of "false certifications and forged documents." (Pl.'s Opp'n Mem. at 3). These allegations, however, serve as the basis of a malicious prosecution claim, which is addressed below, not a false arrest claim.[10] *See Jones*, 971 F. Supp. at 789 (citing *Broughton v. State of New York*, 37 N.Y.2d 451, 457 (1975) ("when an unlawful arrest has been effected by a warrant an appropriate form of action is malicious prosecution.").

Further, if Plaintiff seeks to challenge the validity of the arrest warrant, he must do so in the jurisdiction where it was issued. *See United States v. Leitner*, No. 08-MG-4098, 2008 U.S. Dist. LEXIS 99009, at *4 (W.D.N.Y. Dec. 8, 2008). In this case, that would be the Superior Court of the State of Connecticut. (*See* Arrest Warrant). Plaintiff does not allege that a Connecticut court has found the warrant to be invalid. Accordingly, the warrant is presumptively valid and served as probable cause to his arrest. *See Ruknuddin*, 2013 U.S. Dist. LEXIS 186145 at *30. Since Plaintiff was arrested pursuant to a warrant, he does not have an actionable false arrest or false imprisonment claim under Section 1983. *See Smith*, 2014 U.S. Dist. LEXIS 139267, at *9. Accordingly, I respectfully recommend that these claims be dismissed.

---

[9] The Court takes judicial notice of these documents. *See Bryant v. Rourke*, No. 15-CV-5564 (SJF) (GRB), 2017 U.S. Dist. LEXIS 18777, at n. 1, 2 (E.D.N.Y. Feb. 8, 2017), *adopted by* 2017 U.S. Dist. LEXIS 39678 (Mar. 17, 2017) (noting that an arrest warrant is a public record which the court may take judicial notice of on a Rule 12(b)(6) motion).

[10] The distinction between false arrest and malicious prosecution claims "is critical not only because it affects the allegations and proof but also because it brings the prima facie rule into operation. Essentially this rule recognizes the prima facie validity of actions where there has been a judicial evaluation. Accordingly, the Magistrate [Judge's] consideration of the arrest warrant application will generate a presumption that the arrest was issued on probable cause." *Broughton v. State of New York*, 37 N.Y.2d 451, 457 (1975).

### B. Unlawful Search and Seizure

Plaintiff alleges that the actions taken by "Defendant Police Officer John Fogelman was an unreasonable search and seizure in violation of the Fourth Amendment and a deprivation of liberty without due process of law under the Fifth and Fourteenth Amendments." (Am. Compl. ¶ 78; 82). He brings these claims against Defendant Fogelman in his official and personal capacities.

In analyzing a search and seizure claim, "courts look to the reasonableness of the search when determining whether a search violated a plaintiff's constitutional rights." *Serrano v. City of New York*, 2018 U.S. Dist. LEXIS 116262, at *21 (S.D.N.Y. July 11, 2018) (citing *Terry v. Ohio*, 392 U.S. 1, 9 (1968)). Officers are permitted to conduct a search incident to arrest without additional justification. *See Vassiliou v. City of New York*, No. 18-CV-779 (EK) (VMS), 2021 U.S. Dist. LEXIS 3433, at *26–27 (E.D.N.Y. Jan. 7, 2021) (citing *United States v. Robinson*, 414 U.S. 218, 235 (1973)). Further, to be held liable in his personal capacity, an official "must directly participate in the violation" of a constitutional right "or fail to remedy the violation after learning of it." *Kneitel v. Danchuk*, No. 04-CV-971 (NGG) (LB), 2007 U.S. Dist. LEXIS 49041, at *40 (E.D.N.Y. July 6, 2007) (citing *Wimmer v. Suffolk Cnty. Police Dep't*, 176 F.3d 125, 137 (2d Cir. 1999)).

Here, Plaintiff does not provide any details about his interactions with Defendant Fogelman, and only states that Defendant Fogelman was his "arresting officer." (*Id.* ¶ 10). These allegations infer that Defendant Fogelman conducted a search incident to Plaintiff's arrest. Plaintiff was arrested pursuant to a warrant and an arresting officer is lawfully permitted to conduct a search incident to arrest. *Robinson*, 414 U.S. 235. Therefore, Plaintiff has not sufficiently alleged that an unlawful search and seizure occurred. Since there was no underlying constitutional violation, I respectfully recommend that the unlawful search and seizure claim against Defendant Fogelman in his official and personal capacities be dismissed.

### C. Fair Trial *Brady* Claim[11]

Plaintiff alleges that Assistant District Attorney DeLuca-Farrugia, as well as unnamed prosecutors in Connecticut and the Queens County District Attorney's Office, intentionally failed to disclose exculpatory evidence in their possession. (Am. Compl. ¶¶ 74–75; 100–101; 104). Plaintiff does not suggest what this evidence may be. It is also unclear whether this evidence relates to his harassment charge in Connecticut or his extradition from New York.

The purpose of the requirement that a prosecutor overturn exculpatory evidence, as outlined in *Brady v. Maryland*, 373 U.S. 83 (1963)[12] is to ensure the "reliability of criminal judgments." *Poventud v. City of New York*, 750 F.3d 121, 156 (2d Cir. 2014). Accordingly, undisclosed evidence can only serve as the basis for a *Brady* claim if there has been an adjudication of guilt.[13] *United States v. Payne*, 63 F.3d 1200, 1209 (2d Cir. 1995) (quoting *United States v. Bagley*, 473 U.S. 667, 682 (1985)) (undisclosed "evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different."); *see also Poventud*, 750 F.3d at 156 (quoting *Stickler v. Greene*, 527 U.S. 263, 281

---

[11] "The Second Circuit has recognized *Brady* violations as actionable under [Section] 1983]." *Jeanty v. City of Utica*, No. 16-CV-966 (BKS) (TWD), 2021 U.S. Dist. LEXIS 7737, at *44 (N.D.N.Y. Jan. 14, 2021) (citing *Poventud v. City of New York*, 750 F.3d 121, 132 (2d Cir. 2014)).

[12] "A classic *Brady* violation contains three elements: 'the evidence at issue must be favorable to the accused, either because it is exculpatory or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensured.'" *Fappiano v. City of New York*, 640 F. App'x 115, 118 (2d Cir. 2016) (quoting *United States v. Rivas*, 377 F.3d 195, 199 (2d Cir. 2004). A *Brady* claim can only accrue when there has been an adjudication of guilt. Without this, Plaintiff cannot be prejudiced and cannot satisfy the last requirement. Here, Plaintiff only makes conclusory allegations that Defendants withheld *Brady* evidence. (Am. Compl. ¶¶ 74–75; 100–101; 104). Even if he could prove the first two elements—that Defendants suppressed evidence favorable to his defense—his claim would fail because he cannot show that he suffered prejudice.

[13] Circuits throughout the country have held that a *Brady* claim cannot exist unless there was a trial that resulted in a guilty verdict. *See e.g., Livers v. Scheneck*, 700 F.3d 340, 359 (8th Cir. 2012) ("there was no *Brady* violation because [the plaintiffs] were not convicted"); *United States v. Coppa*, 267 F. 3d 132, 144 (2d Cir. 2001) ("there is no *Brady* violation unless there is a reasonable probability that earlier disclosure of the evidence would have produced a different result at trial, or at a plea proceeding."); *McCune v. City of Grand Rapids*, 842 F.2d 903, 907 (6th Cir. 1988) (no *Brady* violation where charges were dismissed before trial); *see also Poventud*, 750 F.3d at n.4 (providing a summary of case law).

(1999) ("there is never a real 'Brady violation' unless the nondisclosure was so serious that there is a reasonable probability the suppressed evidence would have produced a different verdict.").

Here, Plaintiff alleges that "exculpatory material regarding [] Plaintiff's arrest was in the possession of the Queen District Attorney's Office and it failed to turn over such exculpatory evidence in a timely manner and purposely concealed it." (Am. Compl. ¶ 74) and that DeLuca-Farrugia "maliciously targeted Plaintiff and perpetuated knowingly false allegations and statements against Plaintiff while withholding exculpatory evidence and presenting lies to judges." (Id. ¶ 101; see also ¶¶ 100; 105–106).

Plaintiff has not alleged that he was charged with any crime in New York, nor that he was prosecuted for any crime by the Queens District Attorney's Office.[14] (See City's Mem. at 7). He also has not alleged that he was found guilty of the underlying harassment charge in Connecticut. Since there was no trial or guilty verdict, Plaintiff cannot sustain a Brady claim under Section 1983 against DeLuca-Farrugia nor any member of the Queen's County District Attorney's Office. See Poventud, 750 F.3d at 156. Accordingly, I respectfully recommend that Plaintiff's Brady claims be dismissed.

### D. Malicious Prosecution

Plaintiff also claims that he was the victim of malicious prosecution. (Am. Compl. ¶¶ 3, 72). In order to prevail on a malicious prosecution claim pursuant to Section 1983, "a plaintiff is required to demonstrate: (1) the commencement or continuation of a criminal proceeding against [him]; (2) the termination of the proceeding in [his] favor; (3) that there was no probable cause for

---

[14] To the extent Plaintiff argues that DeLuca-Farrugia or any Queens County District Attorney withheld Brady evidence related to his extradition, this argument fails. Brady principles do not apply in the context of extradition hearings. See United States v. Pena-Bencosme, No. 05-M-1518 (SMG), 2007 U.S. Dist. LEXIS 80316, at *20 (E.D.N.Y. Oct. 30, 2007) (citing In re Extradition of Koskotas, 127 F.R.D. 13, 27 (D. Mass. 1989)) ("Courts have expressly held that Brady principles do not pertain to extradition hearings because no determination of guilt or innocence is being made.")

the proceeding; and (4) that the proceeding was instituted with malice." *Daniels v. Gladstone*, 2019 U.S Dist. LEXIS 128167, at \*26 (E.D.N.Y. July 31, 2019) (quoting *Mitchell v. City of New York*, 841 F.3d 72, 79 (2d Cir. 2016)).

Here, Plaintiff's pleadings fail to satisfy the last three elements. First, Plaintiff's pleadings are void of any allegation that the underlying prosecution terminated in his favor. *See Stone v. Port Authority of N.Y. & N.J.*, 2014 U.S. Dist. LEXIS 92950, at \*27 (E.D.N.Y. July 8, 2014) (quoting *Fulton v. Robinson*, 289 F.3d 188, 196 (2d Cir. 2002)) ("where a prosecution did not result in an acquittal, it is generally not deemed to have ended in favor of the accused, for purposes of a malicious prosecution claim, unless its final disposition is such as to indicate the accused's innocence."). Indeed, he was not prosecuted for any crime in New York; he was arrested pursuant to a Connecticut warrant and subsequently extradited. Therefore, Plaintiff does not meet this element.

Second, the arrest warrant served as probable cause for his arrest and the subsequent proceeding. "An arrest made pursuant to a facially valid arrest warrant is presumed to be made with probable cause." *Ruknuddin*, 2013 U.S. Dist. LEXIS 186145, at \*30. Probable cause is a complete defense to a malicious prosecution claim. *See e.g., Powell v. Murphy*, 593 F. App'x 25, 28 (2d Cir. 2014); *Manganiello v. City of New York*, 612 F.3d 149, 161–62 (2d Cir. 1996). As discussed above, if Plaintiff wishes to challenge the validity of the Connecticut arrest warrant, he must do so in Connecticut. *See. Leitner*, 2008 U.S. Dist. LEXIS 99009, at \*4 (W.D.N.Y. Dec. 8, 2008). Accordingly, the warrant is presumptively valid and served as probable cause for his arrest. *See Ruknuddin*, 2013 U.S. Dist. LEXIS 186145m at \*30. For these reasons, Plaintiff does not meet this element.

Third, Plaintiff fails to offer any facts to suggest that his arrest was made with malice. "Only where probable cause to initiate a proceeding is 'so totally lacking' may malice reasonably be inferred." *Sulkowska v. City of New York*, 129 F. Supp. 2d 274, 295 (S.D.N.Y. 2001) (quoting *Martin v. Albany*, 42 N.Y.2d 13, 17 (1977)). As discussed above, the arrest warrant served as probable cause for Plaintiff's arrest. Therefore, Plaintiff does not meet this element.

To the extent Plaintiff argues that Defendants prosecuted him with malice by conspiring with Connecticut officials to frame him, this argument also fails. (*See* Am. Compl. ¶ 24; 100). Plaintiff offers no facts to support his conspiracy theory. To survive a motion to dismiss alleging a conspiracy, "Plaintiff must plead facts to 'suggest that an agreement was made'" between the conspiring parties. *Relevant Sports, LLC v. United States Soccer Federation, Inc*., 2020 U.S. Dist. LEXIS 128260, at *18 (E.D.N.Y. July 20, 2020) (quoting *Anderson*, 680 F.3d at 184). Plaintiff's pleadings contain no such facts. Accordingly, his pleadings are insufficient to establish that a conspiracy existed between Defendants and Connecticut officials, and this argument cannot be used to support an assertion that the prosecution was therefore brought with malice.

For the above reasons, I respectfully recommend that Plaintiff's malicious prosecution claim be dismissed.

### E. Prosecutorial Misconduct

Plaintiff claims he was "a victim of prosecutorial misconduct . . . and clear violations of the letter of law by the Queens County District Attorney's Office," (Am. Compl. ¶¶ 3; 29) and sues DeLuca-Farrugia in his official and individual capacities. He claims that DeLuca-Farrugia "perpetuated knowingly false allegations and statements against Plaintiff while withholding exculpatory evidence and presenting lies to judges." (*Id.* 101).

As an initial matter, the Court is not required to accept as true Plaintiff's conclusory allegations that DeLuca-Farrugia engaged in misconduct. *See e.g., In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (quoting *United States v. Bonanno Organized Crime Family*, 879 F.2d 20, 27 (2d Cir. 1989)) (the court may disregard "legal conclusions, deductions or opinions couched as factual allegations."); *Davey v. Jones*, 2007 U.S. Dist. LEXIS 35965, at *2 (S.D.N.Y. 2007)  ("bald contentions, unsupported characterizations, and legal conclusions are not well-pleaded allegations, and will not suffice to default a motion to dismiss."). Plaintiff has failed to plead any specific acts of wrongdoing by DeLuca-Farrugia or any other attorney in the Queens County District Attorney's Office.[15] Even if he did, these claims would be barred by the Eleventh Amendment and prosecutorial immunity.

First, Plaintiff's claims against DeLuca-Farrugia or another Assistant District Attorney in their official capacity as prosecutors is barred by the Eleventh Amendment. The Eleventh Amendment to the United States Constitution provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Eleventh Amendment immunity "also extends to suits against state officers in their official capacities," including prosecutors. *Redd v. Leftenant*, No. 16-CV-4919 (JFB) (SIL), 2017 U.S. Dist. LEXIS 145882, *9 (E.D.N.Y. Sept. 7, 2017) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)), *aff'd* 737 F. App'x 603 (2d Cir. 2018).

---

[15] Plaintiff alleges that DeLuca-Farrugia and other Assistant District Attorneys withheld "exculpatory evidence." (Am. Compl. 74). As discussed above, even if the attorneys withheld *Brady* evidence, there is no constitutional violation, since there was no adjudication of guilt. To state a claim under Section 1983, "[Plaintiff must allege facts indicating that some official action has caused the plaintiff to be deprived of his [] constitutional rights*." Guzman v. City of New York*, No. 10 Civ. 1048 (DLC), 2011 U.S. Dist. LEXIS 73206, at *9 (S.D.N.Y. July 7, 2011) (quoting *Zherka v. Amicone*, 634 F.3d 642, 644 (2d Cir. 2011)). Since there was no constitutional violation, DeLuca-Farrugia cannot be held liable under Section 1983.

"When prosecuting a criminal matter, a district attorney in New York represents the state, not the county." *Redd*, 2017 U.S. Dist. LEXIS 145882 at *10 (quoting *McCray v. City of N.Y.*, 2007 U.S. Dist. LEXIS 90875, at *12 (S.D.N.Y. Dec. 11, 2007); *see also Baez v. Hennessy*, 853 F.2d 73, 77 (2d Cir. 1988) ("when prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county."); *Blessinger v. City of N.Y.*, No. 17-CV-47, 2017 U.S. Dist. LEXIS 142397, at *5–6 (S.D.N.Y. Sept. 1, 2017) ("a district attorney is considered a state official for Eleventh Amendment purposes.), *aff'd* 736 F. App'x 263 (2d Cir. 2018).

Therefore, Plaintiff's claims against DeLuca-Farrugia and any Queens District Attorney is barred by the Eleventh Amendment, and I respectfully recommend that the claims against him in his official capacity be dismissed.

Second, Plaintiff's claims against DeLuca-Farrugia in his individual capacity are barred by prosecutorial immunity. It is well established that "a state prosecuting attorney who acted within the scope of his duties in initiating and pursing a criminal prosecution is immune from a civil suit for damages under 1983." *Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir. 2005) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 410, 431 (1976). To recover under Section 1983 specifically, Plaintiff "must allege facts indicating that some official action has caused [him] to be deprived of his [] constitutional rights." *Guzman*, 2011 U.S. Dist. LEXIS 73206, at *9. A prosecutor "has absolute immunity" unless he "acts without any colorable claim of authority." *See Shmueli*, 424 F.3d at 237 (quoting *Barr v. Abrams*, 810 F.2d 356, 361 (2d Cir. 1987)).

Plaintiff claims that DeLuca-Farrugia "violated substantive laws, as well as Rules of Professional Conduct, in initiating and pursing a criminal prosecution" against him and therefore, DeLuca-Farrugia cannot enjoy prosecutorial immunity. (Pl.'s Opp'n Mem. at 8). Other than

17

alleging that DeLuca-Farrugia withheld *Brady* evidence, Plaintiff fails to attribute any specific wrongdoing to DeLuca-Farrugia. Even if he did, absolute immunity extends to a wide scope of allegations of misconduct. *See e.g., Burns v. Reed*, 500 U.S. 478, 490–91 (1991) (eliciting and knowingly using false testimony); *Schmueli v. City of N.Y.*, 424 F.3d 231, 236–38 (2d Cir. 2005) (commencing a prosecution due to a personal vendetta); *Hill v. City of N.Y.*, 45 F.3d 653, 662 (2d Cir. 1995) (intentionally suppressing *Brady* evidence); *Dory v. Ryan*, 2591 F.3d 81, 85 (2d Cir. 1994) (conspiring to present false evidence at trial).

Accordingly, I respectfully recommend that the claims against DeLuca-Farrugia in his personal capacity be dismissed.

### IV. *Monell* Liability

"Congress did not intend municipalities to be held liable [under § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691 (1978); *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 (1986) (holding that a municipality may not be liable under § 1983 "by application of the doctrine of respondeat superior" (italics omitted)). Accordingly, "municipalities may only be held liable when the municipality itself deprives an individual of a constitutional right." *Newton v. City of New York*, 566 F. Supp. 2d 256, 270 (S.D.N.Y. 2008). *Monell* does not create "a separate cause of action," it merely extends liability to a municipal actor. *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006); *Claudio v. Sayer*, 675 F. Supp. 2d 403, 408 (S.D.N.Y. 2009). Thus, an underlying constitutional violation is a prerequisite to municipal liability under *Monell*. *See, e.g., Segal*, 459 F.3d at 219.

To succeed on a *Monell* claim, a Plaintiff "must plausibly allege and ultimately prove three things: '(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial

of a constitutional right.'" *Windley v. Westchester Cnty.*, No. 19 Civ. 4858 (PMH), 2021 U.S. Dist. LEXIS 15498, at \*11 (S.D.N.Y. Jan. 27, 2021) (quoting *Wray v. City of N.Y.*, 490 F.3d 189, 195 (2d Cir. 2007)). A plaintiff may establish a municipal policy or custom by showing:

> (1) a formal policy officially endorsed by the municipality; (2) actions or decisions made by municipal officials with decision-making authority; (3) a practice so persistent and widespread that it constitutes a custom through which constructive notice is imposed upon policymakers; or (4) a failure by policymakers to properly train or supervise their subordinates, such that the policymakers exercised 'deliberate indifference' to the rights of the plaintiff.

*Moran v. Cnty. of Suffolk*, No. 11-CV-3704 (PKC) (GRB), 2015 U.S. Dist. LEXIS 37010, at \*23–24 (E.D.N.Y. Mar. 24, 2015) (citing *Parker v. City of Long Beach*, 563 F. App'x 39 (2d Cir. 2014); *see Monell*, 436 U.S. at 694–95. To survive a motion to dismiss, a *Monell* claim must allege "sufficient factual detail" and not "boilerplate allegations" that the violation of the Plaintiff's constitutional rights resulted from the municipality's custom or official policy. *Windley*, 2021 U.S. Dist. LEXIS 15498, at \*11; *see e.g., Plair v. City of New York*, 789 F.2d 459, 469 (S.D.N.Y. 2011).

Liberally construed, the Amended Complaint alleges *Monell* liability under theories of false arrest and malicious prosecution (Am. Compl. ¶¶ 83–88), and unconstitutional conditions of confinement. (*Id.* ¶¶ 95–97; 110).  Neither claim, however, is sufficient to withstand the City Defendants' motion to dismiss.

### A. No *Monell* Claim for False Arrest and Malicious Prosecution

Plaintiff alleges that the City has unlawful policies related to false arrest and malicious prosecution including policies: 1) to falsely arrest people to meet "a quota of arrests" (Am. Compl. ¶¶ 83–84); 2) to "permit and tolerate a pattern and practice of unreasonable search and seizures, stop and frisks, denial of prompt medical treatment, and deprivations of due process" by police officers (*id.* ¶ 85–86); and 3) to fail to properly train and supervise prosecuting attorneys. (*Id*. ¶¶ 103–104).  For the reasons discussed above, *supra* Point III. A and D**,** Plaintiff does not have viable

claims for false arrest or malicious prosecution, and therefore he has not established an underlying constitutional violation to support a *Monell* claim. *See e.g., Bobolakis v. DiPietrantonio*, 523 F. App'x 85, 87 (2d Cir. 2013) ("because . . . the officers had probable cause to arrest [plaintiff], he suffered no violation of his constitutional rights and there is no basis for imposition of liability on the Town.").

Even if Plaintiff could establish underlying constitutional violations, the above allegations are "mere conclusory reference[s] to a policy or custom with no supporting facts." *DeRaffele v. City of New Rochelle*, No. 15 Civ. 282 (KMK), 2017 U.S. Dist. LEXIS 90735, at *20 (S.D.N.Y. June 13, 2017). Plaintiff provides absolutely no factual allegations to flesh out his bare bones conclusory allegations that such policies exist. In such situations, courts routinely dismiss these *Monell* claims. *See, e.g., Simpson v. Town of Warwick Police Dep't*, 159 F. Supp. 3d 419, 439 (S.D.N.Y. 2016) ("Even assuming *arguendo* that [plaintiff] had established that a [municipal] police officer had violated his right to be free from false arrest, [plaintiff's] *Monell* claim would still fail because he has submitted no evidence that the alleged constitutional violation resulted from a municipal policy, custom, or practice."); *Selvaggio v. Patterson*, 93 F. Supp. 3d 54, 78 (E.D.N.Y. 2015). Further, Plaintiff does not plead any facts to suggest that, absent a formal policy, the City was on notice that the alleged violations were "so obvious, persistent, or pervasive that the municipality's policy makers had to have been aware of the situation." *See Van Hoven v. City of New York*, No. 16 Civ. 2080 (GBD) (DF), 2018 U.S. Dist. LEXIS 143015, at *24 (S.D.N.Y. Aug. 21, 2018), *adopted by* 2018 U.S. Dist. LEXIS 158224 (Sept. 17, 2018).

Accordingly, because Plaintiff does not have claims for false arrest or malicious prosecution, and in any event because his *Monell* claims based on these grounds are inadequately pleaded, such claims should be dismissed.

**B. No *Monell* Claim for Conditions of Confinement**

Plaintiff alleges that while he was at Riker's Island, he was the victim of various "inhumane and physically damaging conditions" including being: exposed to harmful mold conditions and poor air quality; denied access to safe drinking water, food, and reasonable medical care; forced to wear an identification tag that identified him as Jewish; and denied kosher foods. (*Id.* ¶¶ 95–97; 110).[16] The Court considers these to be unconstitutional conditions of confinement claims.[17]

Even if Plaintiff could establish an underlying constitutional violation, his *Monell* claims would still fail because he has not alleged that his rights were violated pursuant to an official City policy or custom. He does not claim that any of the alleged improper conditions of his confinement—his food quality, air quality, access to medical care, or his identification as being Jewish—were the result of a formal City policy or the decision of a municipal officer with decision-making authority. Nor does he allege that a lack of access to safe food and drinking water, clean air, or adequate medical care was "so persistent and widespread that it constitute[ed] a custom through which constructive notice [was] imposed upon policymakers." *Moran*, 2015 U.S. Dist. LEXIS 37010, at *23; *see also, e.g.*, *Mercedes v. Westchester County*, No. 18-CV-4087, 2019 WL 1429566, at *5 (S.D.N.Y. Mar. 29, 2019) (dismissing *Monell* claim alleging that plaintiff was served unhygienic and inedible food but plaintiff did not allege "the existence of any policy, any actions taken or decisions made by ... policymaking officials, any systemic failures to train or supervise," or any "factual indicia from which this Court could infer the existence of a policy or custom"); *Hoffstead v. Aramark Corr. Servs.*, LLC, No. 18-CV-2381, 2019 WL 1331634, at *4–5

---

[16] He also alleges that he sustained "severe and substantial bodily injuries." (Am. Compl. ¶ 97). It is unclear, however, if Plaintiff alleges that his injuries were caused by Defendants, fellow inmates, or both.

[17] Importantly, neither the Department of Corrections nor any corrections officer is named as a defendant in the original or Amended Complaint. Therefore, the only defendant that may be liable for an unconstitutional conditions of confinement claim is the City through *Monell*.

(S.D.N.Y. Mar. 25, 2019) (same); *Ackridge v. Aamark Corr. Food Servs.*, No. 16-CV-6301, 2018 U.S. Dist. LEXIS 54733, at *13 (S.D.N.Y. Mar. 30, 2018) (dismissing *Monell* claim alleging plaintiff was not served kosher food because he failed to allege any specific facts about a custom or policy aside from the facts of his own case); *Gordon v. City of New York*, No. 10-CV-5148, 2012 WL 1068023, at *4 (E.D.N.Y. Mar. 29, 2012) (dismissing *Monell* claim where plaintiff's "allegation [was] unsupported by anything other than the facts of what occurred in his particular case" (citation omitted)). Indeed, he does not allege that any other person at Riker's Island allegedly suffered from these conditions. *See Rutherford v. Westchester Cnty.*, 2020 U.S. Dist. LEXIS 14113, at *35 (S.D.N.Y. Jan. 28, 2020) ("an inmate cannot state a 'consistent and widespread practice' simply by alleging his own experiences and then extrapolating to the entire jail population."). Further, he does not allege that these conditions were the result of policymakers' "failure to properly train subordinates, such that the policymakers exercised 'deliberate indifference'" to his rights. *Rutherford,* 2020 U.S. Dist. LEXIS 14113, at *35 (citing *Parker*, 563 F. App'x 39 at 41); *see, e.g.*, *Smith v. Westchester Cnty.*, No. 19 Civ. 1283 (KMK), 2019 U.S. Dist. LEXIS 193951, at *17 (S.D.N.Y. Nov. 7, 2019) ("[p]laintiff's bare claim that Municipal Defendants failed to train and supervise its staff is a 'boilerplate assertion' and is therefore insufficient, without more, to state a *Monell* claim.") (quoting *Araujo v. City of New York*, No. 08-CV-3715, 2010 U.S. Dist. LEXIS 26082, at *9 (E.D.N.Y. Mar. 19, 2010)).

Accordingly, Plaintiff has failed to sufficiently allege that his rights were violated pursuant to an official municipal policy or custom, and his *Monell* claim should therefore be dismissed.

### V.  New York Criminal Procedure Law §570 *et seq*.

To the extent Plaintiff can even raise a claim in this court for violation of New York Criminal Procedure Law § 570.36 and § 570.40, such claims fail as a matter of law. Plaintiff erroneously claims that New York Criminal Procedure Law § 570 *et seq*. required him to be extradited to Connecticut within 90 days of his arrest (*id*. ¶ 70) and prohibited him from being held without bail (*id*. ¶¶ 3; 70; 105). New York Criminal Procedure Law § 570.36 – § 570.40 provides that a fugitive from another state may be held for 90 days absent a Governor's Warrant. That is, the State has 90 days from the date of arrest to obtain a Governor's Warrant. *See People ex rel. Houllahan v. Lombard*, 374 N.Y.S. 2d 508, 509 (N.Y. App. Div. 4th Dep't 1975) ("the time of the arrest and arraignment as a fugitive starts the period in which the Governor's Warrant **must be issued**.") (emphasis added). Further, the decision to hold a fugitive without bail is a discretionary decision to be made by the arraigning judge. New York Criminal Procedure Law § 570.38.

Plaintiff was arrested on November 21, 2016 (Am. Compl. ¶ 70) and the Governor's Warrant was issued on February 15, 2017. (Dkt. No. 22-6). Accordingly, the Governor's Warrant was obtained 86 days after Plaintiff's arrest, which is within the permissible time period allowed by the statutes. Even if there were deficiencies in the extradition process, the proper forum to challenge an extradition to another state is through a habeas corpus proceeding, not a Section 1983 action. *See People ex rel El v. Scoralick*, 265 A.D. 2d 354, 355 (N.Y. App. Div. 2d Dep't 1999).

Accordingly, I respectfully recommend that any claims relating to Defendants' alleged violation of New York Criminal Procedure Law § 570 *et seq.* be dismissed with prejudice.

### <u>CONCLUSION</u>

For the reasons set forth above, I respectfully recommend that the City Defendants' Motion to Dismiss be granted and the claims against the City, Fogelman, and DeLuca-Farrugia be

dismissed with prejudice. Any objections to the recommendations made in this Report must be filed with the Clerk of the Court and the Honorable Eric R. Komitee within fourteen (14) days of receipt hereof. Failure to file timely objections waives the right to appeal the District Court's Order. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).

RESPECTFULLY RECOMMENDED

/S/ RAMON E. REYES, JR.
Ramon E. Reyes, Jr.
United States Magistrate Judge

Dated: July 23, 2021
        Brooklyn, New York